### THE LOUIS OLSEN.

### OLSEN v. HARITWEN.

(Circuit Court of Appeals, Ninth Circuit. July 24, 1893.)

### No. 98.

1. STATUTES—CONSTRUCTION—AMENDMENT.

The constitution of California provides that no law shall be amended by reference to its title, but all amended laws shall be re-enacted and published at length as amended. Code Civil Proc. Cal. § 813, was amended and re-enacted by an act in which the whole Code was revised, and which repealed all laws inconsistent with itself. *Held,* that a subdivision of section 813 which was set forth unchanged in the amendatory act was not so re-enacted as to make it a later statute than one on the same subject existing before such re-enactment, and thereby impliedly repeal such other statute.

2. SAME—CODIFICATION—EXISTING LAW.

In Civil Code Cal. § 5, declaring that the provisions of the Code, "so far as they are substantially the same as existing statutes or the common law, must be construed as a continuation thereof, and not as new enactments," the common law referred to is the existing common law, not the law formerly prevailing, which had been abrogated by statute.

3. SAME—CONFLICTING PROVISIONS—MARITIME LIENS—MASTERS' WAGES.

Act Cal. April 13, 1850, adopted for all courts of the state the common law of England, by which the master of a vessel had no lien on the ship for wages. Civil Prac. Act Cal. 1851, § 317, made all vessels liable to liens "for services rendered on board," thereby giving the master a lien for his wages, and this provision is re-enacted in Code Civil Proc. Cal. § 813; but Civil Code Cal. § 3055, provides that the master shall have a general lien for advances, etc., but no lien for his wages; and Pol. Code Cal. § 4480, provides that the Codes must be construed as though

all had been passed at the same moment and were part of the same statute. *Held,* that Civil Code, § 3055, could not be regarded as a mere declaration of the common-law rule, but was a positive enactment; that the common-law rule adopted in 1850, and the provision of the act of 1851 creating the lien, were not in pari materia, in such sense that, on their subsequent incorporation and re-enactment in the Codes, Code Civil Proc. § 813, could prevail, as a re-enactment of the latest expression of the legislative will; but that Civil Code, § 3055, contained the first positive expression of the will of the legislature concerning the master's lien, and, in denying him a lien for wages, constituted an exception to the general rule expressed in Code Civil Proc. § 813, effect being thus given to both provisions. 52 Fed. Rep. 652, reversed.

Appeal from the District Court of the United States for the Northern District of California.

In Admiralty. Libel by Charles Haritwen against the steam schooner Louis Olsen (William Olsen, claimant) to recover wages due libelant as master of the vessel. A decree was rendered for libelant. 52 Fed. Rep. 652. Claimant appeals. Reversed.

D. T. Sullivan, for appellant.

Page & Eells, for appellee.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The libelant brought suit against the steam schooner Louis Olsen to recover his wages for services rendered in the capacity of master of the vessel on a sailing voyage from San Francisco to the North Pacific ocean. Exceptions were interposed to the libel, on the ground that the master has no lien for his wages. The exceptions were overruled, and a decree was rendered in favor of the libelant. From that decree this appeal is taken.

There is no allegation in the libel as to the nationality of the vessel referred to, but it is conceded that she is an American vessel, and that the contract under which the master rendered the services to the owners was made in the state of California. It is also conceded that no lien upon the vessel exists for the master's wages, either by the maritime law or the common law, and that, if there be such lien, it obtains its existence by virtue of the statute law of the state of California.

In the civil practice act of 1851 (section 317) it was enacted that all steamers, vessels, and boats shall be liable "for services rendered on board at the request of or on contract with their respective owners, masters, agents, or consignees," and that "the said several causes of action shall constitute liens upon all steamers, vessels, and boats." This statute clearly changed the rule of the common law, and by its terms gave the master a lien for his wages. Such was the construction given it in the district court of the United States for California, and affirmed on appeal to the circuit court. The Mary Gratwick, 2 Sawy. 342.

There was no further change in the law until 1873, when the four

Codes of California were simultaneously adopted,—the Civil Code, the Code of Civil Procedure, the Political Code, and the Penal Code. In the Code of Civil Procedure (section 813) the provisions of the law contained in the civil practice act are re-enacted in almost the identical language quoted above. In the Civil Code (section 3055) it is provided as follows:

"The master of a ship has a general lien, independent of possession, upon the ship and freightage, for advances necessarily made or liabilities necessarily incurred by him for the benefit of the ship, but has no lien for his wages."

Here, then, are two provisions of the law apparently in conflict. By the one it is declared that all persons shall have a lien upon the vessel for their wages; by the other it is declared that the master of the ship has no lien for his wages. It is expressly declared in the act whereby the four Codes are adopted that they shall all take effect concurrently. Pol. Code, § 4480, provides as follows:

"With relation to each other, the provisions of the four Codes must be construed * * * as though all such Codes had been passed at the same moment and were parts of the same statute."

Reference, therefore, cannot be had to the date or hour of passage of the two sections, nor to their relative position in the statute books, to ascertain which is the later expression of the will of the legislature.

It is contended that the last clause of section 3055 is but a declaration of the common-law rule, and that it was not intended as a legislative enactment. This argument does not commend itself to our consideration. It is hardly to be conceived that the legislature would have made an empty or purposeless declaration of a rule of common law more than 20 years after that rule had been abrogated by statute. The section must be regarded as a positive enactment. To hold otherwise is not only to deprive the statute of all force and meaning, but to give to it the effect of a false statement; for it was not true that at and prior to that enactment the master had no lien for wages. He had such lien secured to him by statute under the previous practice act.

It is urged that the last clause of section 3055 of the Civil Code is repealed by virtue of the act of the legislature of 1874, amending section 813 of the Code of Civil Procedure. The amendment was embodied in a general act whereby the whole of the Code was revised. The amendments to section 813 consisted in inserting in subdivisions 2, 3, 4, and 5 thereof the words "in this state" or "within this state." Subdivision 1, which contains the provision conferring a lien for services rendered on board of vessels, was not affected by the amendment, and was left unchanged. That subdivision is repeated, however, in the amendatory act, and there follows thereafter a general repeal of "all provisions of the law inconsistent with this act." It is argued that the legislature thereby intended to re-enact subdivision 1 of section 813, and to repeal the last clause of section 3055 of the Civil Code as incon-

sistent therewith. If subdivision 1 had been itself amended by the act of 1874, that fact would furnish strong ground in support of this contention. That subdivision is set forth in the amendatory act, in evident compliance with the constitution of the state, which requires that, in case of amendment or revision of the law, "the act revised or section amended shall be re-enacted and published at length as revised or amended." The effect of such re-enactment has been settled by repeated adjudications, and the rule controlling the same is expressed as follows:

"The constitutional provision requiring amendments to be made by setting out the whole section as amended was not intended to make any different rule as to the effect of such amendments. So far as the section is changed, it must receive a new operation, but so far as it is not changed it would be dangerous to hold that the mere nominal re-enactment should have the effect of disturbing the whole body of statutes in pari materia which had been passed since the first enactment. There must be something in the nature of the new legislation to show such an intent with reasonable clearness before an implied repeal can be recognized." Suth. St. Const. § 133.

In this instance there is not only nothing to show an intention to re-enact subdivision 1, or to give it new force or effect, but we find evidence of a contrary purpose in the fact that, at the time the Code of Civil Procedure was amended, the other Codes were simultaneously revised and amended, and section 3055 of the Civil Code was left unrepealed and unaffected by amendment.

Section 5 of the Civil Code is relied upon to dispose of the conflict between the two sections of the law. That section provides as follows:

"The provisions of this Code, so far as they are substantially the same as existing statutes or the common law, must be construed as a continuation thereof, and not as new enactments."

The common law referred to in section 5 is clearly the existing common law,—that which was enforced at the time the Codes were adopted,—and not the common law which had prevailed at some prior period, but which had been abrogated by statute. The language employed is capable of no other construction. The section refers to the re-enactment of the existing law, whether statutory or common law. The word "existing" refers to and limits the "common law," as well as the "statutes." The section declares that such laws re-enacted in the Code shall be deemed a continuation of the existing law. A law enacted in the Code could not be the continuation of a statute law or of the common law unless the law so enacted had been in force at and prior to the adoption of the Code. To hold otherwise would be to disregard the plain meaning of the words employed.

It is further contended that, if we concede to the last clause of section 3055 the force and effect of a positive enactment, it is still rendered nugatory through a rule of construction which is expressed thus:

"Where two statutes in pari materia, originally enacted at different periods of time, are subsequently incorporated in a revision and re-enacted in

substantially the same language, with the design to accomplish the purpose they were originally intended to produce, the time when they first took effect will be ascertained by the courts, and effect will be given to that which was the latest declaration of the will of the legislature, if they are not harmonious." Suth. St. Const. § 161.

The argument is that by the act of April 13, 1850, the common law of England was adopted as the rule of decision in all the courts of the state. A year later the practice act was adopted, and therein the law was enacted giving a lien upon vessels for services rendered on shipboard, which law, in 1873, was continued in force in section 813 of the Code of Civil Procedure. Having been so continued in force in 1873, and the common-law rule having been also re-enacted in section 3055, it follows that section 813 is the later expression of the will of the legislature, and, by the law of construction just quoted, must prevail over section 3055, which is but a re-enactment upon this particular subject of the general act of April 13, 1850. The difficulty with this argument is that it leaves out of sight some of the plain facts of the previous legislation. The act of April 13, 1850, was a general adoption of the common law of England as the rule of decision in the courts of the state. Under the common law, the master's lien had no existence. In 1851 the practice act was adopted, expressly conferring a lien upon vessels for wages. The statute so enacted was not, strictly speaking, a repeal of the common law; it was the creation of a right which at common law had never existed. The common law so adopted in 1850, and the provision of the practice act abrogating the same, and creating the lien, cannot be regarded as "two statutes in pari materia;" and when the Civil Code was adopted, it cannot be said that the two statutes were "subsequently incorporated in a revision," or that they were "re-enacted in substantially the same language, with the design to accomplish the purpose they were originally intended to produce." On the contrary, section 3055 contains the first positive expression of the will of the legislature concerning the specific subject of a master's lien. The object of the rule just quoted, as of all rules of statutory construction, is to arrive at the legislative intent. The rule is a reasonable one. Where a statute upon a specific subject has been repealed, not expressly, but by implication, by the enactment of a later statute upon the same subject, inconsistent with the first, and both laws are subsequently re-enacted in a revision or codification, they still have the same relative force and effect as before the codification; that is to say, the earlier remains repealed by the later statute. In such a case the presumption arises that the repeal of the earlier statute has been overlooked by the codifiers, and therein lies the reason of the rule. Bank v. Patty, 16 Fed. Rep. 751. Neither the letter nor the reason of that rule applies to this case. When the Codes were adopted, there was no statute upon the subject of liens upon vessels, save and except the law now embodied in section 813. The common-law rule denying the master's lien had never been

v.57 F.no.7—54

formulated in any statutory enactment, and was not found upon any statute book. It cannot be said that there was inadvertence in inserting in the Codes this provision of the common law, and that its abrogation was overlooked. That section must have been intentionally framed and inserted in the laws at the time of the adoption of the Codes as the expression of the intention of the law-makers upon that particular subject. It will be noted that the first clause of that section, declaring that the master shall have a lien upon vessels for his advances, is a departure from the common law; while the last clause, following directly thereafter, and completing the enactment, and denying the master's lien for wages, is a return to the common law. The fact that the last clause so adopted coincides with the unwritten law in force by the act of 1850 cannot create the presumption that the abrogation of that unwritten law by the adoption of the civil practice act, in 1851, was overlooked in the codification. On the other hand, the adoption of this section of the Code is proof that the general subject of the lien of the master upon the vessel was therein considered in all its bearings. It is not disputed that the first clause of the section is in full force and effect, and that the lien thereby created is recognized and enforced. To say that the second clause is empty, void, and of no effect, from the bare fact that it coincides with the common law, is to deprive the legislature of the power to restore the common-law rule in the Codes after it had once been abrogated, unless at the same time they expressly repeal every law upon the statute book inconsistent with such restoration. It must be held that the legislature meant by this positive enactment to restore the common-law rule upon the subject of the master's lien for wages, and the court has not the right to refine away the actual expression of the legislative intent by a rule of construction in a case where the reason of that rule does not apply. It is the duty of the court to give force and effect, if possible, both to section 813 and section 3055. We find no difficulty in doing this. Section 813 contains the expression of the general rule upon the subject of liens for services on shipboard. Section 3055 contains the law upon the subject of the master's lien for advances and wages, and, so far as his lien for wages is concerned, it contains the only exception to the general rule declared in section 813. The decree of the district court is reversed, and the cause is remanded, with instructions to dismiss the libel at the cost of the libelant, and that the appellant recover his costs on this appeal.