Lynch v. Chase.

## J. B. LYNCH v. SETH W. CHASE.

1. WARDEN OF PENITENTIARY—*No Vested Right in Office.* The office of warden of the state penitentiary is created for the public convenience, and the incumbent of the office is the mere agent of the public, who, by virtue of his appointment, acquires the right to exercise the functions of the office and receive the prescribed compensation until the end of his term, or until such time as there may be a resignation or forfeiture of and removal from the office in the manner provided by law; but he has no property or vested right in such office.

2. UNFAITHFUL OFFICER—*Removal.* It is within the power of the legislature to provide a summary method of removing incompetent and unfaithful officers, and to that end it may confer authority upon executive or administrative officers.

3. EXECUTIVE OFFICER—*Action not Judicial.* While the proceeding to remove from office for cause involves the examination of facts and the exercise of judgment and discretion by the executive officer, his action is not judicial in the sense that it belongs exclusively to the courts.

4. ACT, *not Repealed.* Chapter 239 of the Laws of 1889, providing for the investigation of the affairs of state institutions and the conduct of officers connected with the same, is not superseded or repealed by any of the provisions of chapter 152 of the Laws of 1891, being an act in relation to the state penitentiary.

5. ———— *Title to Act.* The title to the act constituting chapter 239 of the Laws of 1889 is broad enough to cover the provisions of the act authorizing the investigation of state institutions and the conduct of the officers in charge of the same.

6. COMMITTEE—*Investigation—Report—Removal of Warden.* A committee appointed under the provisions of that act has authority to investigate charges duly preferred against the warden of the

penitentiary when the legislature is not in session; and where, upon sufficient notice, a hearing is had and a report made finding that the charges are sustained and cause for removal exists, the governor, under the law of 1891, is authorized to act upon the findings and report, and remove the warden from his office.

7. PRACTICE — *Trial* — *Res Judicata.* In a summary proceeding for the removal of officers under the statute the same formality and precision are not required as in a trial before a court, and the accused cannot claim the benefits, incidents and common-law rights pertaining to such a trial, nor has the doctrine of *res adjudicata* any application in such proceedings.

*Original Proceeding in Quo Warranto.*

ALL the material facts are stated in the opinion herein, filed June 19, 1895.

*F. B. Dawes*, attorney general, for plaintiff.
*Frank Herald*, and *Waters & Waters*, for defendant.

The opinion of the court was delivered by

JOHNSTON, J. : This is an original proceeding in *quo warranto* to determine who of two contending persons is entitled to the office of warden of the state penitentiary. No controversy exists as to the facts upon which the title to the office depends, and, to facilitate the trial and secure an early decision, the facts have been embodied in the pleadings of the parties upon which the case has been submitted. J. B. Lynch, who brings the action, concedes that Seth W. Chase, the defendant, was duly appointed to the office for a term of four years, which began on the 1st day of May, 1893, and ends on the 1st day of May, 1897 ; but he claims that Chase has been legally removed from the office, and that he, Lynch, has been duly appointed in his stead.

It appears that on March 9, 1895, written charges were presented to Gov. E. N. Morrill, calling in ques-

tion the official conduct of Seth W. Chase as warden, upon the grounds of inefficiency, immorality, misconduct, and inattention to the duties of his office. The governor, deeming the charges worthy of credit, and that they emanated from a reliable and trustworthy source; requested Lieut. Gov. James A. Troutman and speaker of the house of representatives Charles E. Lobdell to meet with him on March 18, 1895, and, in pursuance of that request, they did meet on the day named at the executive office and proceeded to select a committee of five members of the legislature, consisting of Senators J. W. Parker, of Johnson county, and Edwin Taylor, of Wyandotte county, and Representatives E. F. Caldwell, of Douglas county, H. J. Bone, of Clark county, and T. P. Wilson, of Barber county, to inquire into the truth of the charges presented to the governor, and to examine into the official conduct of Seth W. Chase as warden of the state penitentiary. After due notice had been given to the warden of the charges and of the time and place of a hearing upon the same, the committee organized and proceeded with the investigation, which continued from day to day for several weeks. Testimony was offered to sustain and also to refute the charges against the warden, who was present in person and by counsel throughout the investigation, and such witnesses as he desired were subpœnaed to testify in his behalf before the committee. On May 31, 1895, the investigation having been completed, the committee filed its report and findings with the governor, together with the testimony which had been taken. A majority of the committee found that several serious charges involving official misconduct and inefficiency were sustained by the testimony, and four members of the committee joined in recommending that he be removed from of-

24—55 KAS.

fice and dismissed from the public service. The governor also examined the testimony in the case, and, upon consideration thereof, found that the charges had been proven, and that the defendant was guilty of inefficiency, inattention to duty, immorality, misconduct, and corruption in office. The governor thereupon determined that there was sufficient cause to remove the defendant from the office of warden, and a removal was accordingly ordered. Due notice of this order was served upon Chase, and immediately thereafter the governor appointed and commissioned J. B. Lynch as warden, who at once qualified in the manner required by law, and on June 7, 1895, demanded from Chase the possession of the office and institution. The demand having been refused, the present proceeding to obtain possession was begun by Lynch.

The decision of the controversy depends upon whether the proceedings for the removal of Chase were legal and effective. It must be considered that an arbitrary removal from the office at the will or pleasure of the governor is not permissible. The tenure of the office is fixed by law at four years, and there is no statutory provision which can be construed as an authority to remove at pleasure. The statute providing for the appointment of a warden, and fixing the tenure of the office, also provides that the governor may remove him from office for cause. ( Laws of 1891, ch. 152, § 3.) Where there is no term or tenure fixed by the constitution or the statute, or where the office is to be held during the pleasure of the appointing power, the power of removal is discretionary and without control; but it is well settled that where an officer is chosen for a definite term, and provision is made for his removal for cause, the causes for removal must be alleged, the party notified, and a hearing

had. (*The State v. Mitchell*, 50 Kas. 289; *Jacques v. Little*, 51 id. 300; *Lease v. Freeborn*, 52 id. 750.) Where the power of removal is definite, and the limits of its exercise prescribed, it must be exercised in the manner and upon the conditions provided by law. Where the statute gives power of removal for cause, without specifying the causes, the power is necessarily of a discretionary nature, and the removing authority is the exclusive judge of the cause and the sufficiency thereof; but where the statute specifies the causes for removal and prescribes the procedure, it would seem that removals could not be made for other causes nor in any other method than that prescribed by statute. In the present case the proceedings for investigation and removal were instituted by the governor, and the procedure authorized by chapter 239 of the Laws of 1889 appears to have been followed for the purpose of determining whether there was sufficient cause for a removal. The proceedings under that statute appear to be regular, and the report of the committee upon the charges made against the defendant shows sufficient cause for removal. The findings and report of that committee were made the basis of the action of the governor in removing the defendant from the office of warden.

It is first insisted that the judicial power of the state is vested in the courts, and not in the governor, and that therefore he had no right to try and determine the charges made against the defendant, nor to make an order or render a judgment which would operate to oust the defendant from his office. Although the power to hear and determine is of a judicial nature, it is such a power as is frequently conferred on executive and administrative officers. It does not follow that, because the governor or other functionary hears, considers, and decides,

2. Unfaithful officer— removal.

he performs a judicial function which belongs exclusively to a judicial officer or tribunal. We think the legislature has ample power to provide a summary method of suspending and removing incompetent and unfaithful officers, and that it may be accomplished without a judicial trial or judgment. The theory that a removal cannot be effected without a judicial trial and upon judgment of a judicial tribunal only prevails where it is regarded that the office is a hereditament or one in which the officer has a property or vested right which cannot be disturbed. Although this view is sanctioned by the common law, it is wholly inconsistent with our system of government. It has been said : ''Officers are created for the administration of public affairs. When a person is inducted into an office he thereby becomes empowered to exercise its powers and to perform its duties, not for his, but for the public, benefit. It would be a misnomer and a perversion of terms to say that an incumbent owned an office or had any title to it.'' (*Donahue v. Will County*, 100 Ill. 94.) The office is created for the public convenience, and the officer is the mere agent of the public, who, by virtue of his election or appointment, acquires the right to exercise the functions of the office and receive the prescribed compensation until the end of his term, or until such time as there may be a resignation or forfeiture of and removal from the office in the manner provided by law. In the absence of a constitutional limitation, the legislature has ample power to protect the public by providing a speedy and effective method for ridding the public service of officers who are incompetent, irresponsible, or dishonest, and to that end may prescribe the grounds which will operate as a forfeiture and provide what officer or

1. Warden of penitentiary —no vested right in office.

tribunal shall determine the fact.   The decided weight
of authority is that, while the proceeding
**3. Executive officer — action not judicial.** to remove from office for cause involves the
examination of facts and the exercise of
judgment and discretion by the executive
officer, his action is not judicial in the sense that it
belongs exclusively to the courts.   ( *The State v. Haw-
kins,* 44 Ohio St. 98 ;  *Conner v. Mayor,* 5 N. Y. 285 ;
*The State v. McGarry,* 21 Wis. 496 ;  *The State v. Prince,*
45 id. 610 ;  *Keenan v. Perry,* 24 Tex. 253 ;  *The State v.
Doherty,* 25 La. Ann. 119 ;  *Tafft v. Adams,* 3 Gray, 126 ;
*Ex parte Wiley,* 54 Ala. 226 ;  *Patton v. Vaughan,* 39 Ark.
211 ;  *Wright v. Defrees,* 8 Ind. 298 ;  *Donahue v. Will Co.*
100 Ill. 94 ;  *Cameron v. Parker,* 38 Pac. Rep. [Okl.] 14,
and cases cited ;  *Rankin v. Jauman,* 36 Pac. Rep.
[Idaho] 502 ;  Throop, Pub. Off., §§ 19, 345.)

There is a further contention that chapter 152 of
the Laws of 1891 is the latest legislative expression
concerning the investigation of the state penitentiary
and the removal of the warden, and as its provisions
are complete within themselves, and antagonistic to
the law of 1889, the provisions of the law of 1891
necessarily supersede those of 1889.   This conten-
tion cannot be sustained.   The act of 1891 is largely
a re-enactment of the law of 1868 for the govern-
ment of the penitentiary.   Some additions and modi-
fications have been made to fit the changed conditions,
but the provisions with reference to the appointment
and removal of the warden, as well as the power
conferred upon the board of directors to inquire
into the management of the institution and the con-
duct of the officers, are the same as those of the
earlier statute, and under the rules of construction
they must be treated as a continuation of such pro-
visions, and not as a new enactment. (General Stat-

utes of 1889, ¶ 6687.) These provisions were in force when the law of 1889, providing for the investigation of state institutions and of the conduct of the officers connected therewith, was enacted, and they were re-enacted in the same terms in 1891, after the law of 1889 had been in force for a period of two years, clearly indicating that the legislature did not regard them as repugnant to each other, nor that one should supersede the other. The authority given to the directors in the act in relation to the penitentiary to inquire into its management was mainly intended as a means of gaining information which would enable them to govern and control the institution as the law requires. They are the governing body of the penitentiary and are required from time to time to examine and inquire into all matters connected with the government, discipline, and police of the institution, the purchases and sales of articles provided for the penitentiary or sold on account thereof, and for this purpose they may compel the attendance of witnesses, the production of books, papers and writings before them, and the president of the board is authorized to administer oaths to witnesses. (Laws of 1891, ch. 152, § 5.) There is nothing in the act providing that their inquiry or findings shall be made the basis of a proceeding to remove the warden. And this inquiry is made upon their own account, and whenever they deem it necessary in order that they may the better govern and regulate the institution and perform the duties imposed on them by law. The law of 1889, however, is specific, and provides in terms what official conduct shall constitute grounds for a removal, and provides for the organization of a body to investigate those causes and determine whether the statutory

4. Act, not repealed.

grounds for removal exist. It is plain that the provisions of the two statutes are not repugnant to each other, and that the one was not intended as a substitute for the other. The act in relation to the penitentiary provides that the warden may be removed by the governor for cause, but it does not in terms provide how the cause shall be ascertained. In the absence of such a provision, it is generally held that it rests with the governor to adopt a method of inquiry and ascertainment which his judgment may suggest, providing a reasonable notice is given to the official and a fair hearing had upon the charges preferred; and when proof is offered, he is the exclusive judge of the cause and of the sufficiency thereof. In this case, however, the legislature has supplemented the provision with reference to removal by the enactment of 1889, providing a method by which the causes for removal may be ascertained and established. Although it may not be an exclusive method for determining cause, we are clearly of opinion that it is a proper method of procedure, and that the governor may properly act upon the investigation and report prepared under it.

It is urged that the act of 1889, under which the investigation was made, is unconstitutional, for the reason that the title does not fairly indicate 5. Title to act. and cover the provisions of the act. The title is "An act providing for the appointment of committees to investigate the affairs of state institutions and conduct of officers." It has been repeatedly held that § 16 of article 2 of the constitution is not to be enforced in any narrow or technical spirit, but that a liberal interpretation should be placed upon the language employed in the title to express the subject of the act. The provision,

as has been held, must be applied in a fair and reasonable way, so that it will not embarrass or defeat the proper and legitimate exercise of the legislative functions. It is not necessary that the title should be an abstract of the entire act, but it is deemed to be sufficient if the title fairly indicates, though in general terms, its scope and purposes. Everything connected with the main purpose and reasonably adapted to secure the objects indicated by the title may be embraced in the act, without violating the constitutional inhibition. The title in the present case, although somewhat restricted, provides for the creation of a tribunal to inquire into the affairs of state institutions and the conduct of officers. It clearly indicates that an investigation or hearing is to be had before this tribunal, and anything reasonably adapted to carry out that purpose may be fairly regarded as embraced within the title. Whether the title is sufficiently broad to justify a removal by the governor upon the coming in of the report of the committee is unnecessary to the disposition of the present case. Even if the provision with reference to removal was held to be outside of the title, and therefore invalid, there is ample provision for the removal of the warden under a statute unquestionably valid. Under the rule adopted by this court in numerous cases, the title is undoubtedly sufficient to authorize the creation of the committee and the investigation and report that were made. (*Woodruff v. Baldwin*, 23 Kas. 491; *Philpin .v. McCarty*, 24 id. 393; *Comm'rs of Marion Co. v. Comm'rs of Harvey Co.*, 26 id. 181; *Comm'rs of Cherokee Co. v. The State*, 36 id. 337; *Railway Co. v. Harrelson*, 44 id. 253; *The State v. Bush*, 45 id. 140; *In re Pinkney*, 47 id. 89; *The State v. Lewelling*, 51 id. 562; *In re Sanders*, 53 id. 191.)

We have, then, a committee with undoubted authority to investigate and determine whether cause for removal exists, and there is unquestioned authority in the governor to remove the warden when cause is shown. The statutory provisions relating to investigation and report have been substantially followed. The charges were made in writing to the governor, and he, deeming them worthy of credit, instituted the investigation. The defendant received due notice of the charges and had a hearing before a tribunal duly authorized to inquire and report. Cause having been shown as the law requires, nothing remained for the governor but to remove the defendant from his office. The fact that the testimony was not taken nor the inquiry made by the governor himself is unimportant, so long as the inquiry was made and the cause for removal shown in one of the methods pointed out by the statute.

*6. Committee— investigation —report— removal of warden.*

There is some complaint that the proceedings were not as full and precise as the statute prescribes, but upon examination we find no serious defects. Some of the charges were not as specific as they might have been, but most of those upon which findings were made were sufficient to fairly inform the defendant of the accusation, and to enable him to prepare for the hearing. A summary proceeding of this character is not like a common-law trial. nor is the same precision and accuracy required as in a trial before a court. (*The People v. Board of Police Comm'rs*, 98 N. Y. 332; *The People v. Same*, 99 id. 676; *The People, ex rel., v. McClave*, 123 id. 512; Throop, Pub. Off., § 380.) As the committee does not constitute a court, and as the incidents and common-law rights of a court trial are not

*7. Practice— trial—res judicata.*

required, the objections made in regard to certain informalities and irregularities are unavailing. There is no room for the application of the doctrine of *res adjudicata* in such proceedings, and the fact that other charges against the defendant had been made and investigated does not operate to defeat the present proceedings.

The allegation that the testimony was insufficient to sustain the findings is without force. The evidence was heard and considered by a tribunal created for that purpose, and the duty of determining its sufficiency belongs to that tribunal, and not to the court. Testimony was offered to sustain and refute the charges, and the weight and sufficiency of that testimony, as well as the fact of whether cause was shown, were concluded by the determination of the committee and the action of the governor.

Judgment will be awarded in favor of the plaintiff, in accordance with the prayer of his petition.

All the Justices concurring.