56　231
61　275

## R. B. McMASTER v. FRANK HERALD.
### No. 10397.

1. EXECUTIVE FUNCTION, *How Exercised.* In order properly to exercise an executive function, it is often a requisite preliminary to hear evidence to guide and direct the judgment of the executive as to the course to pursue; and it is not necessary, under our constitution, to refer all such questions to the courts. (*Lynch v. Chase,* 55 Kan. 367, 40 Pac. Rep. 666, followed.)

2. COMMISSIONER OF ELECTIONS—*Refusal to Register Legal Voters —Official Misconduct.* It is official misconduct for a commissioner of elections to refuse to register applicants, with the intent wilfully to deprive them of the right of suffrage, when he knows that they are legal voters in the wards or precincts in which they offer to register; and this notwithstanding an appeal lies from his decision to the board of supervisors.

### *Original Proceeding in Quo Warranto.*

ON March 3, 1893, the defendant was duly appointed by the governor to the office of commissioner of elections of the city of Topeka, in accordance with that clause of section 2, chapter 206, Laws of 1889, (¶ 715, Gen. Stat. 1889,) which reads as follows:

"The governor of the state shall appoint for each city of the first class to which the provisions of this act apply, immediately upon the going into effect of this act, a commissioner of elections, who shall hold his office for the term of four years and until his successor is appointed and qualified; but he may for official misconduct be removed by the governor; the governor shall appoint his successor for the same term of years; and in case of death, resignation or removal of the commissioner of elections, the appointment shall be for the unexpired term."

The defendant duly qualified, and has ever since retained possession of the office. On June 3, 1895, however, charges of official misconduct were preferred against him to the governor by Charles S. Elliott,

chairman of the republican central committee of
Shawnee county. Attached to the charges as an ex-
hibit were several newspaper clippings criticising the
conduct of the defendant in the discharge of his official
functions. On July 3, the governor addressed a letter
to the defendant inclosing a copy of the charges, but
the newspaper clippings were not attached; and the
defendant was notified that he would have an oppor-
tunity to answer the charges by filing affidavits or
other instruments of writing with the governor, on or
before July 11, at which time he would carefully con-
sider the evidence that might be submitted. The no-
tice, with said copy of the charges, was personally
delivered to the defendant on the same day. On July
8, the defendant addressed a letter to the governor
denying his authority to examine as to the truth of
the charges, and complaining especially of the method
of the proposed procedure by affidavits. On July 10,
the governor replied to this letter, and stated that the
defendant would have the privilege of examining wit-
nesses, or presenting any evidence which he might
have in his defense, either by personal appearance of
witnesses, or by affidavit, and stating that the exam-
ination would be commenced on the next morning at
10 o'clock, when witnesses would be carefully exam-
ined, and thereafter the evidence submitted would be
thoughtfully considered. On July 11, the defendant
appeared with A. B. Quinton, his attorney, and filed
a protest against any further proceedings, on the
ground that the governor had no jurisdiction to enter-
tain the proposed inquiry into the alleged official mis-
conduct of the defendant. The examination was
commenced, and was then continued until July 17.
On July 1, one G. F. Kimball, manager of the Kim-
ball Printing Company, of Topeka, made and filed

with the governor an affidavit stating that the defendant and another person had been guilty of corruption in office as to a bill for printing certain registration books, whereby the defendant and the other person named received back from the printing company part of its collection for the work done, in pursuance of an agreement that the bill rendered should be for a larger sum than the actual contract price. On July 12, the governor inclosed a copy of this affidavit to the defendant as an additional charge against him, and the defendant received the copy and the notification on the same day. The investigation was resumed on July 17, and an adjournment was taken to July 24, when it was concluded. On August 2, the governor made his findings and embodied the same in a letter addressed to the defendant, concluding with an order of removal of the defendant from his office, to take effect forthwith. The findings of the governor were as follows:

"(1) That you have failed, neglected and refused to register voters who were by law entitled to register, after proper evidence had been submitted to you showing that they were entitled to register, which said registration was refused with the intent of wilfully depriving said voters of the right to vote when you knew that they were legal voters in the wards or precincts from which they offered to register; (2) that you have been guilty of insolence to legal voters who came to your office for the purpose of obtaining registration, to such an extent that other legal voters refused to register on account thereof; (3) that you corruptly entered into a contract with the Kimball Printing Company, by which it was agreed that you should receive a rebate upon printing to be done by said company for you at the expense of the city of Topeka.

"I do further find that each of the foregoing findings constitutes official misconduct for which you

should be removed from your position and office of commissioner of elections of the city of Topeka.''

Afterward, on the same day, the governor appointed the plaintiff, R. B. McMaster, commissioner of elections of the city of Topeka, *vice* Frank Herald, removed, and, on August 3, the plaintiff subscribed and duly filed his official oath, but the defendant refused to turn over the office to him, and this action was commenced August 6 to test the rights of the respective parties to said office.

*Ferry & Doran,* and *Valentine, Godard & Valentine,* for plaintiff.

*Quinton & Quinton,* and *W. C. Webb,* for defendant.

The opinion of the court was delivered by

MARTIN, C. J. : I. The defendant challenges the right of the governor to investigate any charge of official misconduct with a view to removal from office. He contends that such a power cannot be conferred upon the governor, nor, indeed, upon any other person, officer, or tribunal, but the courts. This would be an interesting question, if new, but it is not new. It received very full examination and consideration in the case of *Lynch v. Chase,* 55 Kan. 367, 40 Pac. Rep. 666. It was there held, Mr. Justice JOHNSTON delivering the opinion of the court, that it is within the power of the legislature to provide a summary method of removing incompetent and unfaithful officers, and to that end it may confer authority upon executive officers ; and that while the proceeding to remove from office for cause involves the examination of facts and the exercise of judgment and discretion by the executive officer, his action is not judicial in the sense that it belongs exclusively to the courts. Many executive

acts involve the exercise of judgment and discretion, including the power to hear and determine, and yet the acts and the power cannot be held to be judicial. In order properly to exercise an executive function it is often a requisite preliminary to hear evidence to guide and direct the judgment of the executive as to the course to pursue, and it is not necessary, under our constitution, to refer all such questions to the courts. Even where the tenure of an office is declared by law, but power is given to remove for cause or for official misconduct, all that seems necessary is due notice of the charge preferred, and a hearing thereon, with opportunity to the accused officer to be heard in his own defense. (*Jacques v. Litle*, 51 Kan. 300, 303; *Lease v. Freeborn*, 52 id. 750, 755; *Eastman v. Householder*, 54 id. 63, 67; *Lynch v. Chase*, supra, and cases cited.) We are entirely satisfied with the conclusion reached in the case first and last cited, and therefore need not further pursue this line of inquiry.

II. It is further contended that findings 1 and 2 do not show official misconduct, and that the charge referred to in finding 3 was not sustained by the evidence. As to findings 1 and 2, it is said that, by section 5 of said chapter 206, Laws of 1889, the commissioner is made the exclusive judge of the qualifications of the applicant for registration until the close of the books, and that any applicant who feels aggrieved by his decision may appeal to the board of supervisors, and upon this proposition is based an argument that no official misconduct can arise from the refusal of the commissioner to register any person. This argument is fallacious. Of course, it is the duty of the commissioner to decide in the first instance who is and who is not entitled to registration, and he should not be held responsible for any honest mistake of judg-

ment; but it is declared by the findings that registration was refused with the intent wilfully to deprive voters of their right when the defendant knew that they were legal voters in the wards or precincts in which they offered to register. It would be official misconduct for the commissioner to drive an applicant to the necessity of an appeal when he well knew that such applicant was entitled to register and to vote. An appeal is presumably given for the purpose of rectifying honest mistakes of the commissioner in doubtful cases as to the right of the applicant. Many persons entitled to exercise the right of suffrage might be deprived of it for want of understanding as to the method of taking an appeal, or for the want of time to prosecute it before the board of supervisors, which is not convened until after the close of the registration, and finally adjourns its session seven days before the election. Findings 1 and 2 plainly show official misconduct. Finding 3 shows corruption in office, which certainly is official misconduct. It is said in behalf of the defendant that the charge on which this finding is based was disproved, but we are bound by the findings of the governor. We have no evidence that the proceeding before him was not fairly conducted. The defendant was present personally and by counsel, and introduced evidence in his own behalf. This evidence is not before us, and we know nothing of the facts, except as found by the governor and from the statements of counsel in their arguments and briefs.

Complaint is made that the proceedings before the governor were irregular, in that copies of the newspaper clippings ought to have been attached to the copy of the charges served upon him, and that the affidavit of Kimball, of which he had no notice until after the first day's proceedings, should not be con-

sidered as part of the charges preferred against him. The clippings, however, formed no real or substantial part of the charges, and the findings of the governor were not based thereon; and it seems, from the admissions of counsel in their brief, that evidence was introduced by the defendant before the governor touching the charge made in the Kimball affidavit. In *Lynch v. Chase,* supra, it was said that

"In a summary proceeding for the removal of officers under the statute, the same formality and precision are not required as in a trial before a court, and the accused cannot claim the benefits, incidents and common-law rights pertaining to such a trial."

There is nothing to indicate that the defendant was not given a fair opportunity to be heard in his own defense. The clippings were of no consequence, except to show that there was some dissatisfaction with the defendant's administration of the office; and as to the charge contained in the Kimball affidavit, the defendant had 12 days to meet it before the close of the hearing.

Judgment of ouster will be entered against the defendant, and the plaintiff placed in the possession of the office of commissioner of elections of the city of Topeka.

All the Justices concurring.