## COLLINS COAL COMPANY *v*. HADLEY, ADMINISTRATRIX.

[No. 5,466. Filed October 25, 1905. Rehearing denied June 29, 1906. Transfer denied October 12, 1906.]

1. PLEADING.—*Complaint.*—*Master and Servant.*—*Negligence.*—*Mines.*—*Statutes.*—A complaint showing that defendant employed 100 men in its coal mines; that defendant failed to keep on hand a supply of props, caps and timbers to secure the roof of the mines; that its mining boss failed to inspect the rooms oftener than once a week; that it failed to provide a black-

board on which the miners could register their orders for timber for supporting the roof of the mine and that by reason thereof decedent was killed, states a cause of action under the act of 1891 (Acts 1891, p. 57, §13, §7473 Burns 1901).    p. 642.

2.   ACTION. — *Death by Wrongful Act.* — *Mines.* — *Statutes.* — *Executors and Administrators.*—Under §7473 Burns 1901, Acts 1891, p. 57, §13, a right of action for the death of a coal miner accrues to the widow, children, adopted children, parents or other dependents, and not to. deceased's personal representatives.    p. 642.

3.   STATUTES. — *Construction.* — *Creating New Rights.*—Statutes creating rights not given by the common law are strictly construed, and the statutory remedies are exclusive.    p. 644.

4.   PLEADING. — *Complaint.* —*Demurrer for Want of Facts.* — *Plaintiff's Right to Sue.*—A demurrer for want of facts to a complaint properly questions plaintiff's right to sue.    p. 645.

5.   STATUTES.—*Repeal.*—*Negligence.*—*Death.*—*Right to Sue.*—The act of 1899 (Acts 1899, p. 405, §285 Burns 1901), providing generally that the personal representatives of one whose death was caused by wrongful act may maintain an action therefor, does not repeal §7473 Burns 1901, Acts 1891, p. 57, §13, giving a right of action to the widow, children, parents and dependents of a miner killed in a coal mine because of the owner's violation of the mining laws. *President, etc.,* v. *Bradshaw,* 6 Ind. 146, and *Pittsburgh, etc., R. Co.* v. *Burton,* 139 Ind. 357, distinguished.    pp. 645, 652.

6.   SAME. — *Repeal.* — *Implication.* — Repeals by implication are not favored by the courts, and laws will be construed, if possible, so as to avoid such a repeal.    p. 646.

7.   SAME.—*Repeal.*—*Presumptions.*—The legislature is presumed to know the provisions of prior laws on a subject and to repeal same by the use of express terms, if a repeal is desired.    p. 647.

8.   SAME.—*Reënactment of Prior.*—*Limiting Statutes.*—A limiting statute, virtually making an exception to a prior general statute, is not repealed by a subsequent general statute reënacting in terms or substance such prior general statute.    p. 648.

From Clay Circuit Court; *Presley O. Colliver,* Judge.

Action by Louise Hadley, as administratrix of the estate of Goldie Hadley, deceased, against the Collins Coal Company. From a judgment on a verdict for plaintiff for $5,000, defendant appeals. *Reversed.*

*Rawley & Hutchison* and *Henry, Crane & Miller,* for appellant.

*A. W. Knight, George A. Knight* and *Jacob Herr,* for appellee.

WILEY, C. J.—Appellee brought this action to recover damages resulting from the death of the decedent caused by the alleged negligent acts of appellant. The complaint is in a single paragraph, to which a demurrer for want of facts was overruled. Answer in general denial. Trial by jury, resulting in a general verdict for appellee. Appellant's motion for a new trial overruled, and judgment upon the verdict.

By the assignment of errors, appellant is entitled to have considered the action of the court in overruling the demurrer to the complaint and its motion for a new trial.

The complaint alleges that the appellee was the duly appointed, qualified and acting administratrix of the estate of the decedent; that appellant was a corporation existing under the laws of Indiana, and engaged in mining and shipping coal; that appellant was the owner of a certain coal mine in Clay county, Indiana, and was engaged in working and operating the same; that the coal was reached and worked by means of a shaft sunk from the surface of the earth, and by driving entries through the same, and turning workrooms off from said entries; that on January 5, 1903, appellant had working in said mine 100 men; that the decedent was in its employ as a coal miner, and was engaged in mining coal in one of the rooms in said mine; that it was the duty of appellant to use reasonable care to furnish the deceased with a reasonably safe place to work, and to protect him therein, and to that end it was the duty of appellant to keep constantly on hand at its said mine a sufficient supply of timbers, and to deliver at the working place all props, caps, and timbers, so that decedent might be able properly to secure his room from caving in;

that it was the further duty of appellant's bank boss to visit and examine each and every working place in the mine at least every alternate day when the miners were at work, and to examine and see that each and every working place was properly secured by props or timbers, and that safety was in all respects assured, and to see that a sufficient supply of props, caps, and timbers was always on hand at decedent's said room or working place, in order that the same might be propped and made secure and safe; that it was the further duty of appellant to place a blackboard, sufficiently large, with the number thereon of every workman employed in the mine, at the most convenient place near the entries, to be used by the workmen in registering thereon such timber as might be required from day to day to make secure their working places.

It is further averred that appellant did not perform its duty in the particulars set forth, but wholly failed and neglected so to do in this, to wit, that it did not keep constantly on hand a sufficient supply of timber of proper length, and deliver to said working place of decedent props, caps, and timbers of proper length when needed and required by decedent, so that he might properly secure said room and working place from caving in; but, on the contrary, it negligently and carelessly refused and neglected to deliver the necessary caps, props and timbers, although requested often by him so to do. It is next alleged that appellant carelessly failed, by its bank boss, to visit and examine the working place at least every alternate day, to see that the same was properly secured by props, etc., and that safety to the miners was in all respects assured, and to see that a sufficient supply of props, etc., was always on hand; that, on the contrary, it did not, by its said bank boss, visit said working place more than once a week, and negligently and carelessly permitted the same to remain without props, caps, and timbers, so that by reason thereof the decedent

was unable properly to prop and secure the room and working place in which he was engaged.

It is further averred that appellant negligently and carelessly failed to have and place a blackboard of any kind or character at the most convenient place near the mine entries, whereon the workmen could register their wants for timbers, and that decedent was compelled orally to make such requisition for said timbers that he needed or required; that by reason of such failures, all of which were well known to appellant, or might have been by the use of reasonable diligence, said roof of the room in which decedent was working suddenly gave way, caved in, and fell upon him, thereby inflicting injuries which re-sulted in his death; that decedent's death occurred wholly by the fault and negligence of the appellant, as herein alleged, and while the decedent was in the exercise of due care and caution, and without any fault or negligence on his part, or the part of appellee.

It is then averred that prior to said accident there was nothing in the appearance of said roof to indicate immediate danger, and no evidence thereof was discoverable by the usual and ordinary tests, which had been made from time to time, and that said roof could and would have been made perfectly safe by decedent but for the negligence of appellant, as herein alleged. It is then alleged that if appellant had performed its duty and had, by its bank boss, visited said working place of decedent, and had seen that safety was in all respects assured, and that timber, props, and caps were always on hand when needed and required, said injury would not have occurred; that had appellant furnished the decedent with timber, caps, and props, as was its duty, decedent could and would have propped and secured the roof so that the same would not have caved in and fallen upon him. It is then averred that the decedent left surviving him the appel-

lee, who is his widow, and two minor children, and that this action is prosecuted for their benefit.

The first question discussed by counsel is the sufficiency of the complaint, and it is most earnestly contended that it is apparent upon the face of the complaint that

1. the appellee, as administratrix, cannot maintain this action. Appellee bases her right of action upon the failure of appellant to perform certain duties specifically enjoined upon it by statute. This statute, commonly known as the "mining act," requires a mine operator, where more than ten men are employed, to keep on hand constantly a sufficient supply of props, caps and timbers, so that workmen may at all times properly secure the roofs of the mining rooms from caving in; also that the mining boss shall visit and examine each working place in the mine at least every alternate day to see that such places are securely propped and safe for workmen, and to see that a sufficient supply of props, caps, and timbers is on hands, etc. And it further requires that such operator, etc., shall have and place a blackboard at the most convenient place near the mine entrance, upon which workmen may register requests for such timber as may be required to secure their working places. §§7466, 7472 Burns 1901, Acts 1893, p. 147, Acts 1897, p. 168, §4. The complaint charges in definite terms the violation on the part of appellant of all these four requirements of the statute, and if appellee, as administratrix, can maintain the action, the complaint is not subject to a successful attack of the demurrer.

Section thirteen of the act of June 3, 1891 (Acts 1891, p. 57, §7473 Burns 1901), is as follows: "That for any injury

2. to person or persons or property occasioned by any violation of this act, or any wilful failure to comply with any of its provisions, a right of action against the owner, operator, agent or lessee shall accrue to the party injured for the direct injury sustained thereby, and in case of loss of life by reason of such violation, a right of action

shall accrue to the widow, children, or adopted children, or to the parents or parent, or to any other person or persons who were before such loss of life dependent for support on the person or persons so killed, for like recovery for damages for the injury sustained by reason of such loss of life or lives." This statute, in case of death of an employe in a coal mine, vests the right of action in the surviving widow or children of the decedent, and not in his administrator or administratrix, and it has been held both by the Supreme Court and this Court that a personal representative of the decedent cannot maintain the action.

*Maule Coal Co.* v. *Partenheimer* (1900), 155 Ind. 100, and authorities there cited. See, also, *Boyd* v. *Brazil Block Coal Co.* (1900), 25 Ind. App. 157; *L. T. Dickason Coal Co.* v. *Unverferth* (1903), 30 Ind. App. 546.

The case of *Couchman* v. *Prather* (1904), 162 Ind. 250, is instructive here. There, appellant, as administrator, brought an action against a saloon-keeper and his bondsmen for a violation of the liquor law prohibiting sales of liquor to a person in an intoxicated state, and the complaint alleged such sales, and that, as a result thereof, the decedent became so intoxicated as to be unconscious of his condition, and while in that condition attempted to drive in a buggy to his home, and while so doing he fell out of the buggy, breaking his neck, etc.

Section 7288 Burns 1901, §5223 R. S. 1881, provides: "Every person who shall sell, barter, or give away any intoxicating liquors, in violation of any of the provisions of this act shall be personally liable, and also liable on his bond filed in the auditor's office,   *   *   *   to any person who shall sustain any injury or damage to his person or property or means of support on account of the use of such intoxicating liquors, so sold as aforesaid, to be enforced by appropriate action in any court of competent jurisdiction."

It was urged by appellant in that case that the action was prosecuted under §285 Burns 1901, Acts 1899, p. 405,

3. which confers upon the personal representative of a decedent, whose death was caused by the wrongful act or omission of another, to prosecute an action to recover damages for causing such death. In deciding the case the Supreme Court used the following language: "A statute giving a remedy which did not exist at common law, not only speaks affirmatively, but it also speaks negatively. In such circumstances the maxim *expressio unius est exclusio alterius* has a particular application. Sutherland, Stat. Constr., §325. So far as a remedy by way of damages is concerned, the rule is that when a new right is conferred by statute, and an adequate provision for its enforcement is therein made, the statutory remedy is exclusive. *Storms* v. *Stevens* [1885], 104 Ind. 46; Sedgwick, Stat. and Const. Law, 94; Endlich, Interp. of Stat., §465; Sutherland, Stat. Constr., §399."

In *Storms* v. *Stevens, supra,* it was said: "Where a statute creates a new right and prescribes a mode of enforcing it, that mode must be pursued to the exclusion of all other remedies. Such has been the settled law in this State for more than sixty years, and such is the law elsewhere."

In *Couchman* v. *Prather, supra,* it was said: "Complications would arise from the holding that, in the circumstances of a case like this, suit could be maintained under §285, *supra.* It would result in the action's being instituted and controlled by a statutory trustee, instead of by the person injured in his means of support, in his individual capacity, as contemplated by §7288, *supra.*" In this State it is no longer a question of legitimate debate that where a special statute gives a right of action to a designated class or classes of persons, they, and they alone, can maintain such action.

The demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action

properly questions the right of the plaintiff therein to maintain such action. *Boyd* v. *Brazil Block Coal Co., supra.*

Counsel for appellee seek to avoid the rule established by the cases cited, upon the ground that §285, *supra,* repeals §7473, *supra,* "as to the person who shall bring the action.". Without entering into a discussion of the question thus raised, we are clearly of the opinion that the position assumed by counsel is not tenable. As the personal representative of the decedent in this case has no right under the statute to prosecute the action, the demurrer to the complaint should have been sustained.

The judgment is reversed, with directions to the trial court to sustain appellant's demurrer to the complaint.

## On Petition for Rehearing.

Wiley, J.—Appellee has asked for a rehearing and has supported her petition therefor by an able and ingenious brief. While several reasons are assigned, they are all included in the single question decided in the original opinion, viz: That under the facts stated in the complaint the right of action was in the widow of decedent and not in his personal representative.

It is urged that the action was rightly brought in the name of the administratrix, for the reason that section thirteen of the mining act (Acts 1891, p. 57, §7473 Burns 1901) "was modified by the later-enacted general statute of 1899 (Acts 1899, p. 405, §285 Burns 1901), which conferred the right of action for death by wrongful act upon the personal representative."

It is insisted that under the amended act of 1899, *supra,* a right of action where death results from the "wrongful act or omission" of one, is lodged solely in the personal representative of the decedent. If this is true, the amended act repeals, by implication, §7473, *supra,* which gives the

right to the widow "or to any other person or persons who were before such loss of life dependent for support on the person or persons so killed," etc.

If the latter section is repealed, then we were in error in holding that the administratrix could not maintain this action. Prior to the reënactment in 1899 of the general statute giving a right of action for the death of a person caused by the wrongful act or omission of another, the damages recoverable inured "to the exclusive benefit of the widow and children, if any, or next of kin," etc. The only change made by the amendatory act of 1899, *supra,* was by adding the words "or widower (as the case may be)."

It seems clear that the purpose of the amendatory act was to extend the provisions of the statute to the widower, by making him a beneficiary thereunder. It is evi-

6.  dent, from the words employed, that it was not the intention of the legislature to repeal section thirteen of the mining act. So, if the latter section was repealed, it was by implication. Repeals by implication are not favored.

In *Board, etc.,* v. *Garty* (1903), 161 Ind. 464, it was said: "It is a familiar rule, and one universally affirmed by the authorities, that a repeal by implication is not favored. In accordance with this rule, two or more acts on the same subject must, if possible, be so construed that both may be permitted to stand. It has been repeatedly affirmed by decisions of this court that implied repeals are only recognized and upheld when the later act is so repugnant to the earlier as to render the repugnancy or conflict between them irreconcilable. A court will always, if possible, adopt that construction which, under the particular circumstances in a given case, will permit both laws to stand and be operative."

In 1 Lewis's Sutherland, Stat. Constr. (2d ed.), §247, it is said: " 'When some office or function can by fair construction be assigned to both acts, and they confer different

·powers to be exercised for different purposes, both must stand, though they were designed to operate upon the same general subject.' *Woods* v. *Board, etc.* [1893], 136 N. Y. 403, 32 N. E. 1011. * * *. 'The earliest statute continues in force unless the two are clearly inconsistent with and repugnant to each other, or unless in the later statute some express notice is taken of the former plainly indicating an intention to repeal it; and where two acts are seemingly repugnant, they should, if possible, be so construed that the latter may not operate as a repeal of the former by implication.' *People, ex rel.,* v. *Raymond* [1900], 186 Ill. 407, 57 N. E. 1066. These expressions of opinion are supported by numerous cases."

In 1 Lewis's Sutherland, Stat. Constr. (2d ed.), §267, the author says: "If, by fair and reasonable interpretation, acts which are seemingly incompatible or contradictory may be enforced and made to operate in harmony and without absurdity, both will be upheld, and the later one will not be regarded as repealing the others by construction or intendment. As laws are presumed to be passed with deliberation and with a full knowledge of all existing ones on the same subject, it is but reasonable to conclude that the legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcilable. * * * The act being silent as to repeal and affirmative, it will not be held to abrogate any prior law which can reasonably and justly operate without antagonism. A statute which does not take away any right, or impose any substantially new duty, but regulates with additional requirements a duty imposed by a previous statute, is not to be deemed inconsistent with the previous act. Two statutes are not repugnant to each other unless they relate to the same subject and are passed for the same purpose. 'It is a reasonable presumption that all laws are passed with a knowledge of those already existing, and

that the legislature does not intend to repeal a statute without so declaring.' "

In 1 Lewis's Sutherland, Stat. Constr. (2d ed.), §273, is found the following:  " 'A fair law which is merely a reënactment of a former does not repeal an intermediate act which has qualified or limited the first one, but such intermediate act will be deemed to remain in force, and to qualify or modify the new act in the same manner as it did the first.' This is especially true if the intermediate law is special or particular and the reënacted law is a general law on the same subject. * * * Where a law is substantially reënacted it is said to show that the legislature did not regard it as repugnant to an intermediate act to some extent covering the same subject." These declarations of the law, applicable to repeals, are abundantly sustained by the authorities, of which we cite the following: *Powell* v. *King* (1899), 78 Minn. 83, 80 N. W. 850; *State, ex rel.,* v. *Commissioners, etc.* (1890), 21 Nev. 19, 23 Pac. 935; *Township of Harrison* v. *Board, etc.* (1898), 117 Mich. 215, 75 N. W. 456; *Coöperative Sav., etc., Assn.* v. *Fawick* (1899), 11 S. Dak. 589, 79 N. W. 847; *Small* v. *Lutz* (1902), 41 Ore. 570, 67 Pac. 421, 69 Pac. 825; *Bentley* v. *Adams* (1896), 92 Wis. 386, 66 N. W. 505; *State, ex rel.,* v. *Beard* (1892), 21 Nev. 218, 29 Pac. 531; *State, ex rel.,* v. *Mayor, etc.* (1894), 57 N. J. L. 298, 30 Atl. 543; *Oleson* v. *Haritwen* (1893), 57 Fed. 845, 6 C. C. A. 608; *People* v. *Wenzel* (1895), 105 Mich. 70, 62 N. W. 1038; *Curbay* v. *Bellemer* (1888), 70 Mich. 106, 37 N. W. 911; *Gazollo* v. *McCann* (1895), 63 Mo. App. 414; *Lynch* v. *Chase* (1895), 55 Kan. 367, 40 Pac. 666; *Blain* v. *Bailey* (1865), 25 Ind. 165; *Blumenthal* v. *Tibbits* (1903), 160 Ind. 70.

In the last case cited it was insisted that section seventeen of the act approved March 7, 1883 (Acts 1883, p. 151, §2484 Burns 1901), amending the decedent's act, repealed §802 Burns 1901, §790 R. S. 1881, of the civil

code, but the court held otherwise, and in the opinion said: "It is true that §2484, *supra,* was enacted in 1883, while §802, *supra,* was enacted in 1881, but §2484 is substantially a reënactment of §151 of the decedent's act, enacted in 1881 (Acts 1881, p. 423), and the presumption against a repeal under such circumstances is especially strong."

In 1852 the legislature passed two laws, one of which was special, exempting farm lands lying within the corporate limits of cities from municipal taxation, and the other general, giving cities power to collect an *ad valorem* tax on all property within their corporate limits. In 1857 the latter act was amended, but the section conferring power upon cities to collect taxes on "all property within such city" was reënacted in precisely the same language.

In *Blain* v. *Bailey, supra,* the question involved was whether the act of 1857 repealed by implication the special act of 1852, exempting farm lands within the corporate limits of a city from taxation. It was held that the special act was not repealed, and in the decision the court employed the following language: "While these two acts continued in force they were, by the settled rules of construction, to be so interpreted that both could have effect. This could be done by holding the particular cases mentioned in the exempting act to constitute exceptions to the general provisions of the other act, and we are not aware that any doubt was entertained upon that subject at that time. Now we cannot suppose that the legislature, by reënacting a provision in the same language which was employed in a repealed statute, intended to impart to it a wider scope, or other meaning, than that which the same words were previously intended to import, especially when the effect would be to accomplish what is not favored in the law—the repeal of another statute by implication. It is more reasonable to hold that the words have been employed in the same sense in which they had been used in the act repealed. * * * The position that it was not intended to repeal

the act in question is strongly confirmed by the fact that the act of 1857 (section one) expressly repeals several acts which would undoubtedly have been repealed by it by implication, but is entirely silent as to this act. Why was this? The legislature must be presumed to have acted with deliberation, and with a full knowledge of all existing acts upon the same subject. * * * Again, the forty-second section of the act of 1857 is a general statute, without negative words, while the exempting act of 1852 is particular. In such a case the rule is that there is no repeal by implication, unless it is absolutely necessary in order that the later act shall have any meaning at all." Citing Dwarris, Statutes, *675 ; Sedgwick, Stat. and Const. Law, 123 ; *Williams* v. *Pritchard* (1790), 4 T. R. 2.

Endlich, Interp. of Stat., §370, says: "It is scarcely necessary to remark, that, where the same language, which has received a certain judicial construction in an act, is used in an act amendatory of the same, it is to be presumed to have been used there in the same sense, and intended to be subject to the same construction."

It is past understanding that the words "wrongful act or omission of another" in the act of 1899, *supra,* should have a wider scope, or a different meaning than they were construed to have had in the repealed statute. As we have seen, the amendatory act is a reënactment of the old statute, in precisely the same language, adding thereto the words, "or widower (as the case may be)."

In 1852 the Illinois legislature passed a law giving a right of action for the death of a person by "wrongful act," etc., and provided that the action should be brought by the personal representative "of such deceased person." This statute is substantially like §285 Burns 1901, Acts 1899, p. 405, except it does not include the widower, as a beneficiary. In 1874 the statute in its original form was reënacted. R. L. of Illinois (1874), Chap. 70, p. 582.

In 1872 the Illinois legislature passed a law relating to mines, miners, etc. Acts 1871-2, p. 568. Section fourteen of that act gave a right of action for death, resulting from any "wilful violations of this act, or wilful failure to comply with any of its provisions," and lodged such right of action in "the widow of the person so killed, or his lineal heirs or adopted children * * * dependent for support on the person or persons so killed."

In *Litchfield Coal Co.* v. *Taylor* (1876), 81 Ill. 590, the, identical question involved here was presented for decision., In that case the action was commenced in the name of the administrator of the decedent. Subsequently the court permitted the declaration and summons to be amended by substituting the widow as plaintiff. There, as here, it was contended that the reënactment of the general statute in 1874 repealed by implication section fourteen of the mining act, and hence the action could only be prosecuted in the name of the personal representative. In the course of the decision the court said: "We are satisfied the widow was the proper person to bring the action. The fourteenth section of the act expressly authorizes her to bring the suit. Chapter 70, entitled 'Injuries,' R. L. 1874, p. 582, which authorizes an action in the name of the personal representatives, did not repeal the fourteenth section of the act entitled 'Miners.' The former act is general, while the act in relation to miners may be regarded as special, and the latter must control as to all cases specially enumerated in the act itself, while the other act, being general, would embrace all other cases." Citing *Town of Ottawa* v. *County of La Salle* (1851), 12 Ill. 339.

While decided cases in other jurisdictions are not authorities binding upon courts in this jurisdiction, they are worthy of our consideration, and we are at liberty to follow them if we believe they properly declare the law. The case. last cited is, we believe, a correct declaration of the law, and is in harmony with the general rule announced in the

original opinion, and supported by the great weight of authority.

Counsel for appellee seek to parry the force of the decision in *Couchman* v. *Prather* (1904), 162 Ind. 250, cited in the original opinion, by saying that "it is not in point." We cannot agree with counsel, but on the contrary regard the question there involved and decided directly in point. The facts upon which that case rested are so fully stated in the original opinion that we will not advert to them farther.

Counsel for appellee rely largely upon two cases—*President, etc.,* v. *Bradshaw* (1855), 6 Ind. 146, and *Pittsburgh, etc., R. Co.* v. *Burton* (1894), 139 Ind. 357—in support of their contention that the amendatory act of 1899 (§285 Burns 1901, Acts 1899, p. 405) repealed section fourteen of the mining act (§7473 Burns 1901, Acts 1891, p. 57), and by reason thereof urge that the amendatory act governs.

In the case of *President, etc.,* v. *Bradshaw, supra,* two statutes passed at the same session of the legislature were involved. These two statutes were upon the same subject-matter, and the question was: Did the latter repeal, by implication, the former? The substance of the first statute was that whenever any person should die from injuries happening through the negligence of a railroad company, a right of action for damages should exist in favor of certain specified persons against such company. One of the beneficiaries named in this statute was the wife of the person so killed. 1 R. S. 1852, p. 426, §3. Such right of action was limited by this statute against railroad companies. Thirty-eight days later the legislature extended this right, making it general against all persons, natural and artificial, annexing, however, some modifications and limitations upon its exercise. 2 R. S. 1852, p. 205, §784.

This later act is identical with §285, *supra,* except that it limited the recovery to $5,000, and the "widower" was

not named as a beneficiary. In considering the case the court said: "The two acts quoted are upon the same subject-matter, that is, they both create a right of action in a successor, to be pursued by the same system of practice, in the same tribunals, for a tort committed upon a deceased person, and they must be considered together. The first, as we have said, gives the right of action in such cases against a railroad company; the second, against all persons. The first does not regard the question whether the deceased, if living, could have maintained the action for the same tort; the second does. The first gives the right of action to the widow or other relatives, as the case may happen, and gives the judgment recovered exclusively to the plaintiff in the suit; the second vests the right of action in the legal representative of the deceased, and requires the proceeds of the judgment recovered to be distributed to the widow and heirs, according to the general law of distribution of personal estate. The first makes no provision for the brothers and sisters and remoter relatives of a deceased miner killed upon a railroad; the second does. The first does not limit the time in which suit may be brought; the second does. The first does not limit the amount of damages that may be recovered; the second does. The second is more comprehensive than the first, covering the whole ground occupied by it, and more. The two are utterly inconsistent in their provisions and cannot both be enforced; the latter is much the more reasonable and judicious law, is more in harmony with general principles, furnishes an ample remedy, and, we think, repeals the former."

Counsel for appellee say that "no distinction can be drawn between the above case and the one at bar." There is a clear and marked distinction. In the case of *President, etc.,* v. *Bradshaw, supra,* the court had under consideration two statutes passed at the same session of the legislature, and both acts related to the same subject-matter. In the case we are considering the two statutes are essentially different.

Section 7473, *supra,* created a new right of action growing out of violations of the mining act, and made ample provision for asserting and enforcing such new right, and designated the persons who became beneficiaries thereunder.

The amendatory act of 1899, *supra,* supplies a general procedure, by vesting in the personal representative of a decedent, who died from the wrongful act or omission of another, where such act or omission is made wrongful by statute, provided such statute makes no provision for its enforcement, or where an action is founded upon an act which created a common-law right of action.

Neither is the case of *Pittsburgh, etc., R. Co.* v. *Burton, supra,* in point, which will readily appear from a reference to the question there involved.

In 1879 the legislature passed a law requiring that engine whistles on locomotives should be sounded distinctly three times, not less than eighty rods from any highway crossing, and bells be rung continuously, etc. The same act provided that damages might be recovered for injuries or death resulting from a violation of the duties imposed, and provided that in case of death the recovery should be limited to $5,000. Acts 1879, p. 173, §4020 *et seq.* R. S. 1881. In 1881 the general act providing for the recovery of damages for "the wrongful act or omission of another" was amended, fixing the amount of recovery at $10,000, instead of $5,000. Acts 1881, p. 240, §284 R. S. 1881. It was held that the limiting clause of section four of the act of 1879, *supra,* fixing the amount of recovery at $5,000, was repealed by the amendatory act of 1881, *supra.*.

It is our conclusion that the original opinion is not in conflict with the rules declared in the two cases we have just reviewed, but, on the contrary, is in harmony with the great weight of authority.

Petition for rehearing overruled.