HERCULES IRON WORKS

*v.*

THE ELGIN, JOLIET AND EASTERN RAILWAY COMPANY.

*Filed at Ottawa May 12, 1892.*

1. EMINENT DOMAIN—*mode prescribed by law for exercise of the power must be strictly pursued.* The exercise of the right of eminent domain being in derogation of the common right of property, the mode prescribed for its exercise must be strictly pursued.

2. SAME—*courts having jurisdiction.* The several city courts of this State having concurrent jurisdiction with the circuit courts within the cities in which they are established, in all civil cases except appeals from justices of the peace, have jurisdiction in proceedings under the Eminent Domain law arising within the territorial limits of such cities. The practice in such city courts is the same as in circuit courts.

3. SAME—*condemnation proceedings—elements of damage.* In a proceeding to condemn a part of the defendant's land for a railroad right of way, the court instructed the jury, that in cases of this kind, damages were recoverable by the owner for such injuries as depreciate the value of the property, when by taking a portion of it the portion left is rendered less useful,—in case of a corporate body, less capable of transacting its business; for such hindrance and inconvenience as occasion loss or diminish and limit its capabilities to transact its business, by decreasing its power to transact as much business, or by necessarily increasing the expense of what may be done, although not diminished, and the jury were told to consider all such matters. They were also told to take into consideration not only the value of the land taken, but all facts shown that contribute to produce damage, as, that the land a part of which is taken is put in a worse shape for use or for the purposes for which it was designed to be used; that some portions of it are more dangerous in consequence; the damage from fire; the inconvenience of access to the balance of the property not taken; increased inconvenience of ingress and egress to and from the property,

and all actual inconvenience and damages the property might sustain in its use, not only for the present, but for the future : *Held,* that the defendant had no cause to complain that the jury were confined to the depreciation in the market value of his property.

4.  In a proceeding to condemn land for a public use it is proper to prove the value of the land per acre, as it may afford one means of determining the compensation to be paid, and in many cases perhaps the only one. But the land owner will have no cause to complain when evidence of its value for all purposes is allowed to be shown by him.

5.  The value of land sought to be condemned is an element proper to be shown and considered for any purpose to which it is devoted or is susceptible of being devoted. Evidence of its value as land, merely, independent of the purposes to which it is or may be appropriately used, will not be of controlling importance. If the property has a special value for any cause, the owner is entitled to compensation for that value; but still, evidence of the value of the land, as such, is competent.

6.  SAME—*condemnation proceedings—application to the judge in vacation.* Where the application for the condemnation of land for a public use is to the judge in vacation, more than the mere filing of the petition is required. By section 3 of the act the petition must be presented to the judge, and he is required to note thereon the day when it is presented, and also a day when he will hear the same, and order summons to residents and publication to non-residents, returnable accordingly.

7.  If the application is made to the judge in vacation, he may note a day when he will hear the cause, and order a jury as provided in section 6 of the act, and proceed with such special jury although a term may have intervened, or the date noted be one of the days of a term of his court.

8.  It is the order of the judge in vacation, in fixing a day for the hearing, etc., that determines the character of the proceeding as in vacation. When the petition is filed with the clerk in vacation, and no order is made by the judge fixing a time for the hearing, it is correct practice for the clerk to issue summons returnable to the ensuing term of court, as in other cases. The application is then treated as made to the judge in term time, and stands for hearing upon the docket of the term at any time not less than ten days after due service of process.

9.  SAME—*obtaining jury.* There is no provision made in the Eminent Domain act for obtaining a jury where the cause is to be heard in term time. The provision in section 6 for the obtaining of a jury applies only to a hearing in vacation. If the hearing is in term time, the jury must be selected from the regular panel for the term.

10. SAME—*jurors not freeholders.* If jurors from the regular panel, called to try the cause, are not freeholders, it will, at most, amount to a cause for challenge of the individual juror.

11. SAME—*personal view—conclusive as to this court.* Where the jury in a condemnation proceeding have had a personal view of the premises to aid them in understanding the other evidence, and to enable them to judge of the weight of the evidence, this court will not disturb the finding of the jury as to the amount of the compensation and damages awarded, unless it is palpably against the weight of the evidence.

12. SAME —*objections to summons and service—waived by defending generally and filing a cross-bill.* Where the record shows that a cause was continued by agreement of the parties, and that the defendant appeared and defended generally, and filed a cross-petition in the case, any objection to the summons, or its service, will be held to have been waived by the defendant.

APPEAL from the City Court of the City of Aurora; the Hon. R. P. GOODWIN, Judge, presiding.

Mr. CHARLES WHEATON, and Mr. WILLIAM GEORGE, for the appellant:

The City Court of Aurora had no jurisdiction of the subject matter of this case. The Eminent Domain Act (sec. 2,) requires the application to be made to the judge of the circuit or county court, either in vacation or term time. There is no power conferred upon the judge of any other court. The word "may" means "shall." *Kane County* v. *Young,* 31 Ill. 194; *Randolph County* v. *Ralls,* 18 id. 29; *Schuyler County* v. *Mercer County,* 4 Gilm. 20; *Gillinwater* v. *Railroad Co.* 13 Ill. 1; *Leibengut* v. *Railroad Co.* 103 id. 431; Cooley's Const. Lim. 528-530; Dillon on Mun. Corp. (1st ed.) secs. 465, 469, 482.

The land owner has the right to have his compensation and damages assessed by disinterested freeholders taken from the body of the county, who can not be selected by the city court, its judge or clerk. The record should show that the jury were such freeholders. See Cooley's Const. Lim. 528; *Nicholas* v. *Bridgeport,* 23 Conn. 189; *Judgson* v. *Freeport,* 25 id. 428; *People* v. *Brighton,* 20 Mich. 57.

Even if the court had jurisdiction of the subject matter, it did not acquire jurisdiction of the person of appellant. The city court has no jurisdiction to send original process out of the city. *People* v. *Barr*, 22 Ill. 241; *Covill* v. *Phy*, 26 id. 432; *Holmes* v. *Fihlenburg*, 54 id. 203; *Dixon* v. *Dixon*, 61 id. 324; *Gardner* v. *Witboard*, 59 id. 145.

The proceeding was one in vacation, and the court should have sustained the challenge to the array of jurors. *Haslam* v. *Railroad Co.* 64 Ill. 353.

In such a proceeding the statute must be strictly pursued. Dillon on Mun. Corp. 465-469; Cooley's Const. Lim. 528-530.

The court erred in admitting evidence of the value of the land per acre. When the property has a special value for any cause, that special value belongs to the owner, and he is entitled to be paid it by the party seeking condemnation. *Johnson* v. *Railway Co.* 111 Ill. 413; *DeBuol* v. *Railway Co.* id. 499; *Dupuis* v. *Railway Co.* 115 id. 97; *Railway Co.* v. *Railroad Co.* 112 id. 589; *Railroad Co.* v. *Railway Co.* 115 id. 375; *Green* v. *Chicago*, 97 id. 370; *Railway Co.* v. *Railroad Co.* 100 id. 21; *Railway Co.* v. *Railway Co.* 105 id. 110.

The court erred in the giving and refusing of instructions.

Messrs. Williams, Holt & Wheeler, for the appellee:

The city court had jurisdiction of the subject matter of this case. Rev. Stat. chap. 47, sec. 2; chap. 37, sec. 240; *Bowman* v. *Railroad Co.* 102 Ill. 467; *Miller* v. *County Comrs.* 119 Mass. 485; *Frantz* v. *Fleitz*, 85 Ill. 362; *Railway Co.* v. *Railroad Co.* 112 id. 589.

By appearance to the merits a defendant waives objections to the summons and the return thereon, and gives the court jurisdiction of his person. *McManus* v. *McDonough*, 107 Ill. 100; *Easton* v. *Altum*, 1 Scam. 250; *Martin* v. *Judd*, 60 Ill. 78; *Mitchels* v. *Jacob*, 17 id. 235; *Baldwin* v. *Murphy*, 82 id. 489; *Roberts* v. *Thomson*, 28 id. 80; *Radcliff* v. *Noyes*, 43 id.

318; *Beal* v. *Harrington,* 116 id. 113; *Abbott* v. *Semple,* 25 id. 107; *Dunn* v. *Keegin,* 3 Scam. 292.

The proceeding was properly treated as a time proceeding, and the challenge to the array of jurors was properly overruled. *Bowman* v. *Railway Co.* 102 Ill. 468; *Johnson* v. *Railroad Co.* 111 id. 418.

The instruction on behalf of appellees was good, and not in conflict with those given on behalf of appellant.

The verdict will not be disturbed, the jury having rendered it in consideration of all the testimony and of their personal inspection of the premises. *Railroad Co.* v. *Schneider,* 127 Ill. 144; *Mitchell* v. *Railroad Co.* 85 id. 567; *Railroad Co.* v. *Hopkins,* 90 id. 323; *Green* v. *Chicago,* 97 id. 373; *McReynolds* v. *Railroad Co.* 106 id. 156; *Railroad Co.* v. *Blake,* 116 id. 166.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was a proceeding to condemn the right of way for appellee's railway across the land of appellant, begun and tried in the city court of Aurora. The jurisdiction of that court, both in respect of the person of the defendant and subject matter of the litigation, is questioned. A special appearance was entered, and motion made to quash the summons and return, which was overruled, and exception taken. The point has been waived by the subsequent entry of general appearance and defending upon the merits. The record shows that before the entry of special appearance the cause had been continued by agreement of the parties. Subsequently, by stipulation of the parties, leave was given the railway company to amend the original petition so as to reduce the amount of land sought to be taken from appellant, and finally appellant not only appeared and defended generally, but filed its cross-petition, invoking the aid of the court in its behalf. Any objection to the original process, or its service upon appellant, has been waived. *Mix* v. *The People,* 106 Ill. 425; *Beal* v. *Harrington,*

116 id. 113; *Leslie* v. *Fischer*, 62 id. 118; *McManus* v. *Mc-Donough*, 107 id. 100; *Baldwin* v. *Murphy*, 82 id. 489.

It is said the court erred in taking jurisdiction in term time, and in not ordering a venire for a special jury to assess compensation, etc., as in cases to be heard in vacation. By the statute the person, body politic or corporate, desiring condemnation, etc., may "apply to the judge of the circuit or county court, either in vacation or term time, * * * by filing with the clerk a petition, setting forth, etc., and praying such judge to cause the compensation to be paid the owner to be ascertained." (Rev. Stat. chap. 47, sec. 2.) If the application is to the judge in vacation, more than the mere filing of the petition is required. Section 3 of the act contemplates, in such cases, the presentation of the petition to the judge, who is required to note thereon the day when it is presented, and also a day when he will hear the same, and order summons to residents and publication of notice to non-residents, returnable accordingly. The sixth section prescribes the mode of obtaining a jury in cases where the hearing is fixed in vacation, and applies only in such cases. There is no provision made for obtaining a jury where the cause is to be heard in term time, and it follows, necessarily, we think, that the compensation is to be ascertained by the jury regularly impaneled for the term. The panel having been selected according to the statute regulating the selection and choosing of jurors for the court, a jury is provided for the ascertainment of compensation as "prescribed by law." If jurors from the regular panel called to try the cause were not freeholders, it would, at most, amount to a cause for challenge of the individual juror. Undoubtedly, as we held in *Haslam* v. *Galena and Southern Wisconsin Railroad Co.* 64 Ill. 353, if the application is made to the judge in vacation he may note a day when he will hear the cause, and order a jury as provided in section 6 of the act, and proceed with such special jury, although a term may have intervened or the date noted be one of the days

·of a term of his court.    In the case last cited we held that
section 6 should be construed to read, that "in cases fixed in
vacation for hearing, it shall be the duty of the clerk," etc.,
·and it is clear that without the order of the judge fixing a day
for the hearing there is no power or authority to draw a spe-
·cial jury, in accordance with that section of the act.    It is the
order of the judge, in vacation, fixing a day for the hearing,
·etc., that determines its character as a proceeding in vacation.
But when the petition is filed with the clerk, in vacation, and
no order is made by the judge fixing a day for the hearing, it
·is correct practice, under the statute, for the clerk to issue
summons returnable to the ensuing term of court, as in other
·cases, and as was here done.    The application is then treated
·as made to the judge in term time, and stands for hearing
·upon the docket of the term, at any time not less than ten
·days after due service of process.    Rev. Stat. chap. 47, sec. 5;
*Bowman* v. *Venice and Carondelet Ry. Co.* 102 Ill. 468; *John-
son* v. *Freeport and Mississippi River Ry. Co.* 111 id. 418.

It is also insisted that the city court is without jurisdiction
in proceedings under the Eminent Domain act.    The consti-
tution of the State is silent as to the mode of ascertaining just
compensation to be paid for private property taken or dam-
aged for public use, except that the same, when not to be
made by the State, "shall in all cases be ascertained by a jury
·as shall be prescribed by law."    (Art. 11, sec. 13.)    There is
therefore no limitation upon the power of the legislature to
·confer jurisdiction upon any of the courts of the State having
·original jurisdiction.    The exercise of the right of eminent
·domain being in derogation of common right of property, the
mode prescribed for its exercise must be strictly pursued, and
it follows that appellant's contention must be sustained, un-
less the legislature has expressly or by necessary implication
·conferred jurisdiction upon the city court in such cases.

Section 1 of article 6 of the constitution of 1870 provides
that judicial power shall be vested in certain enumerated

courts, "and in such other courts as may be created by law in and for cities and incorporated towns." Courts of record had previously been established in various cities of the State, which were continued in existence, until otherwise provided by law, by the fifth section of the schedule to the constitution. By the act in force July 1, 1874, (1 Starr & Curtis, 736,) the legislature sought to establish uniformity in name, organization and jurisdiction of such city courts, and to provide for the organization of like courts in other cities of the State desiring the same and having the required population. In defining the jurisdiction of such courts it is enacted: "They shall have concurrent jurisdiction with the circuit court within the city in which the same may be, in all civil cases, and in all criminal cases except treason and murder, and in appeals from justices of the peace in said city; and the course of proceeding and practice in such courts shall be the same as in the circuit courts, so far as may be." Concurrent jurisdiction is that jurisdiction exercised by different courts at the same time over the same subject matter and within the same territory, and wherein litigants may, in the first instance, resort to either court indifferently. (See Bouvier's Law Dic. "Jurisdiction;" Rapalje & Lawrence, same title.) Hence, concurrent jurisdiction with the circuit court, as here used, means equal power and authority with the circuit court to hear and determine all civil and criminal causes, treason and murder excepted, the subject matter of which arises within the prescribed territorial limits of the city. This is so plainly the meaning of the language employed that construction is not admissible. Moreover, by the fifth section of the act, after providing for the election of judges of such courts, it is enacted: "They shall qualify and be commissioned in the same manner, be vested with the same powers, and perform the same duties as circuit judges." And by the sixth section it is provided: "Such judges, with like privileges as circuit judges, may interchange with each other and with the judges of the circuit court, and

may hold court for each other, perform each other's duties when they find it necessary or "convenient." The course of proceeding and practice in such courts, it is prescribed, shall be the same as in the circuit courts, "so far as may be." It seems clear that in the creation of the city courts the legislature has, in respect of all civil causes arising within the territorial limits of the city, given them like dignity and authority with the circuit courts of the State, and invested the judges thereof with all the powers, and required the performance of all duties, enjoined by law upon the judges of the circuit courts.

The statute before referred to, authorizing the application to be made to the judge of the county or circuit court in vacation or term time, in proceedings for condemnation, went into effect July 1, 1872, and was in force when the City Court act was passed, and it would seem clear by the latter act it was intended to confer jurisdiction upon such judges and city courts to exercise the powers and duties of circuit courts and of the judges thereof. By the comprehensive terms employed, the legislature has included all civil causes, whether authorized by statute or existing at common law. We said in *Bowman* v. *Venice and Carondelet Railway Co.* 102 Ill. 459 : "The condemnation of private property for public use being a judicial proceeding, it can be instituted and prosecuted to a final determination in either the circuit or county court, and hence, whether commenced in vacation or term time, it is equally a proceeding in court. Under the statute, the circuit and county courts are always open for proceedings to condemn for right of way."

We are of opinion that as proceedings to ascertain the just compensation to be made under the Eminent Domain statute are civil proceedings, and the trial of the issue therein is the trial of a civil cause, the city court, by necessary implication, is given jurisdiction of the same. *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railway Co.* 112 Ill. 589 ; *Jones* v. *Albee,* 70 id. 34 ; *Hall* v. *Hamilton,* 74 id. 437.

It is next objected that the court erred in permitting appellee to prove the value of the land taken, without regard to its special surroundings or to the special uses to which it had been devoted by appellant. The objection is not well taken. The value of the land is an element always proper to be shown and considered for any purpose to which it is, or is susceptible of being, devoted. It is undoubtedly true that evidence of its value as land, merely, independently of the purposes to which it is or may be appropriately put, will not be of controlling importance. If the property has a special value for any cause, that special value belongs to the owner, and compensation must be made to him for the value of his land. It is the value which he has, and of which he is deprived, that must be made good to him. (*Chicago and Evanston Railroad Co.* v. *Blake,* 116 Ill. 163; *St. Louis, Jerseyville and Springfield Railroad Co.* v. *Kirby,* 104 id. 345.) It can not, however, be doubted, that evidence of the value of the land, as such, is competent evidence, but the recovery must at last be had upon the basis of the actual value taken from the owner. We see no objection to the question propounded by appellee's counsel as to what was the value of the land per acre. It may have afforded one means of determining the compensation to be paid, and in many cases perhaps the only one. But in this case appellant is in no condition to complain. The value of its land for all purposes to which it was or might be devoted, so far, at least, as counsel saw fit to investigate, was permitted to go to the jury.

Complaint is also made of the instructions given on behalf of the petitioner. It is practically conceded in argument that the instructions are abstractly correct, but it is insisted that under the facts of this case they were calculated to mislead the jury, in that the jury were instructed by them, that in assessing compensation they were to take into consideration only the depreciation in market value of appellant's property, thereby excluding from their consideration, as it is said, the

damages resulting to appellant by taking a part of the property, and the construction and operation of the railroad thereon, arising from the diminished power of doing business, the hindrance and loss of business, and the increased expense of operating appellant's plant by reason and in consequence of such taking and appropriation.

The jury were fully instructed on the part of appellant, and upon every conceivable phase of the questions involved. By the seventh given for it the jury were told, "that in cases of this kind damages are recoverable by the owner of the land for such injuries as depreciate the value of the property, where, by taking a portion of it, the portion left is rendered less useful,—in case of a corporate body, less capable of transacting its business; for such hindrance and inconvenience as occasion loss or diminish and limit its capabilities to transact its business, by decreasing its power to transact as much business, or by necessarily increasing the expense of what may be done although not diminished." The jury are then told they should take all such matters into consideration, so far as shown by the evidence, in estimating the amount to be awarded as compensation. And so with the sixth. They were told to take into consideration not only the value of the land taken, but all facts shown by the evidence that contribute to produce damage, as, that the land, a part of which is taken, is put in worse shape for use or for the purpose for which it was designed to be used; that some portions of it are more dangerous in consequence; the danger from fire, the inconvenience of access to the balance of the property not taken, the increased inconvenience of ingress and egress to and from the property, "and all other actual inconvenience and damage that property may sustain in its use, not only for the present, but for the future," etc.

Numerous other instructions going to the fullest extent were given at the instance of appellant. No good purpose will be served by an examination of the numerous instructions in

detail. It is sufficient to say that appellant had the benefit of every principle to which it was entitled, and there is no necessary conflict between the instructions given for appellee and those given on its behalf.

It is also insisted, with great earnestness, that the damages awarded are grossly inadequate. It is sufficient to say that there is evidence in the record warranting the finding of the jury. They, as well as the trial judge, had the benefit of seeing the witnesses and hearing them testify, and thereby had opportunities of judging of the weight and credit to be given to the testimony which we do not enjoy. The jury, moreover, had the benefit and advantage of a personal view of the premises, with a right to consider what they there saw, in connection with the evidence in the case, in determining the compensation to be awarded. In all such cases it has been always held that the finding should be clearly and palpably against the weight of evidence, to justify an appellate court to interfere with the finding of fact.

We are of opinion that there is no such error in this record as will justify a reversal of the judgment of the city court, and it is accordingly affirmed.

*Judgment affirmed.*