THE PEOPLE *ex rel.* A. L. Kelly

*v.*

SAMUEL B. RAYMOND, County Treasurer, *et al.*

186   407
198  ¹354

*Opinion filed June 21, 1900—Rehearing denied October 3, 1900.*

1. CONSTITUTIONAL LAW—*Shorthand Reporter act of 1887 is constitutional.* Since the superior court of Cook county is of the same class or grade as the circuit court, the act of May 31, 1887, (Laws of 1887, p. 159,) authorizing circuit judges to appoint shorthand reporters, applies to the superior court, and hence does not violate section 29 of article 6 of the constitution, requiring all laws relating to courts of the same class or grade to be uniform.

2. STATUTES—*what is necessary to constitute a repeal by implication.* Where two acts bearing upon the same subject are passed at the same session, the earlier one will continue in force unless the two are inconsistent with and repugnant to each other, or the later act takes some notice of the former and plainly indicates an intention to repeal it.

3. SAME—*law does not favor a repeal by implication.* Though two acts are seemingly repugnant, they should, if possible, be so construed that the later act may not operate as a repeal of the earlier by implication.

4. COUNTIES—*legislature may make compensation of court reporter a charge upon county.* The legislature may authorize the judges of the circuit courts to appoint shorthand reporters, and may make their compensation a charge upon the county without the action of the board of county commissioners.

5. COURTS—*Shorthand Reporter act not repealed by the "Budget law."* The act of May 31, 1887, concerning court reporters, was not repealed, by implication, by the act of June 14, 1887, as amended in 1895, (Laws of 1887, p. 150; Laws of 1895, p. 136;) relating to the powers of the Cook county board of commissioners, since the compensation of such reporters is a "charge upon the county imposed by law, without the action of the board of commissioners," within the meaning of the last proviso to paragraph 6 of section 61 of the act on counties, which is the subject of the amendatory acts of 1887 and 1895, above mentioned.

6. PARTIES—*when a petition for mandamus against a county need not make individuals parties.* Where a county appears by its attorney and demurs to a petition for *mandamus* to compel action by the county clerk, county treasurer, board of county commissioners and the president of the board, the county is bound by the proceedings, and the writ, if awarded, may be served upon the individual members of the county board and its president, though they were not made parties, individually, to the petition.

ORIGINAL petition for *mandamus*.

This is a petition in the name of the People of the State of Illinois, on the relation of A. L. Kelly, for a *mandamus*. The petition was filed at the October term, 1899, of this court, but by leave of court an amended petition was subsequently filed. The amended petition shows that on or about the 18th day of January, 1898, and at the January term of the circuit court of Cook county, the petitioner, A. L. Kelly, under and by virtue of a certain act of the legislature of the State of Illinois, entitled "An act to authorize the judges of the circuit courts to appoint shorthand reporters for the taking and preservation of evidence, and to provide for their compensation," in force July 1, 1887, was duly appointed by Hon. M. F. Tuley, one of the judges of said court, as official shorthand reporter in and for the branch of said court presided over by said judge, which appointment was by an order entered of record in said court upon the date aforesaid, and was made for the term ending the first Tuesday of June, 1903, said office of official shorthand reporter to be held by petitioner during the pleasure of the judge by whom said order was entered, and not to extend beyond the term for which said judge by whom the said appointment was made was elected, and the petitioner's compensation as such reporter was then and there fixed by the said judge by whom said appointment was made, at the sum of five dollars per day, as provided by the said statute; that after the entry of the order, as aforesaid, the said judge dictated to petitioner a certain form of oath, which form of oath was then and there written out in longhand by petitioner and in petitioner's own handwriting and was duly administered by Judge Tuley, but that relator's name was not at that time subscribed to the oath; that on the 20th day of March, 1898, another form of oath was dictated to relator by Judge Tuley, and was written down and relator's name signed to the same, and this oath was thereupon administered to relator by

Judge Tuley, as follows: "I do solemnly swear that I will support the constitution of the United States and the constitution of the State of Illinois, and that I will faithfully discharge the duties of the office of shorthand reporter in and for the circuit court of Cook county, in the branch thereof held by Judge Murray F. Tuley, according to the best of my knowledge and ability."

The petitioner further shows that on the 23d day of February, 1898, being the first day of the February term, the relator entered upon the discharge of the duties of the office of official shorthand reporter in said circuit court, and has continued to so perform the duties of such office during all the time mentioned in the petition, from the 18th day of January, 1898, when she was appointed, until January 1, 1899, with the exception of about twenty days, during which time, by reason of absence or disability, relator was unable to be in attendance upon the said court, but caused the work to be performed by a substitute designated by Judge Tuley, and the services of said substitute are included in the bills which have been presented for payment; that on the 21st day of March, 1898, being the first day of the March term of the said court, she prepared an itemized bill for services so rendered as shorthand reporter during the February term of said court, at the price per diem so fixed by Judge Tuley, and aggregating the sum of $100, and duly certified by the presiding judge, and presented the same to the county treasurer of Cook county and demanded payment of the same out of any funds of said county in his hands; that at the close of each term of said court thereafter, and up to and including the April term, 1899, petitioner duly prepared a like itemized bill for all services so rendered as such official shorthand reporter, stating the aggregate amount due for such services for such term, to which were attached certificates of the judge presiding over said branch of the said court and of the minute clerk in attendance upon said court, and presented the said bills,

and each of them, so certified, to the said county treasurer of Cook county and duly demanded payment of the same out of any funds in his hands; that said bills aggregated the sum of $1115; that said county treasurer declined and refused to pay said bills, and each of them still remains wholly unpaid; that after the presentation to the county treasurer of the said bill for services as shorthand reporter for the February term of the said court, 1898, the same were duly referred by said treasurer to the board of Cook county commissioners, and the same were by said board referred to the finance committee of said board to make report thereon; that subsequently, and at a meeting of said board of Cook county commissioners on the 4th day of April, 1898, said finance committee reported and recommended that the bill be disallowed; that on the 9th of January, 1899, relator served a written notice upon the board of Cook county commissioners, (a copy of which notice is set out in the petition,) informing them that the relator had been appointed by Judge Tuley as official shorthand reporter of the branch of the circuit court presided over by him, and also attached to said notice the bills for services which had already accrued, and requested said board to include in their annual appropriation for the year 1899 a sum sufficient for the payment of said bill, and also for the payment of such future bills as might thereafter accrue for services to be rendered, under and by virtue of said appointment, during the balance of said fiscal year, and each year thereafter during the term of petitioner's appointment; that the said notice and demand were duly referred to the finance committee of the said board of commissioners, as appears from the minutes and records of the meeting of said board held Monday, January 9, 1899; that the said board have hitherto failed and refused to make any report upon said notice and demand of petitioner, and that said board of Cook county commissioners, in adopting a resolution to be termed the "annual appropriation bill" for the said fis-

cal year, have wholly failed and refused to include therein any appropriation for the payment of petitioner's bills which had theretofore accrued or which might accrue thereafter during the said fiscal year; that relator served upon Philip Knopf, the county clerk of Cook county, who is *ex officio* comptroller of the said county, a notice and demand in writing, wherein he was duly notified of the appointment of petitioner as official shorthand reporter and of the amount due and unpaid for services rendered, and demand was therein made that he issue and sign and deliver a warrant or warrants to petitioner, duly drawn upon the treasurer of said Cook county,. for the payment of said sum, pursuant to the statute, but said clerk and *ex officio* comptroller, upon the making of said demand, wholly refused to issue or to execute, or to sign and execute, any such warrant or warrants, and then and there pretended he had no authority so to do; that the said board of Cook county commissioners provided a sufficient fund for the fiscal year of 1898 to cause to be paid from said county funds any charge upon the said county imposed by law, without the action of the board of commissioners, including the fixed salaries of officers required by law to be paid from the county treasury, and to pay jurors' fees and other charges fixed by law; that the said board of Cook county commissioners provided a fund for the payment of like charges against the said county for the said fiscal year of 1899, and that the treasurer of Cook county, at all the various dates hereinbefore mentioned, had and still has in his hands funds of said county for the payment of all charges aforesaid against the said county, and a fund sufficient to pay the bills and demands of petitioner aforesaid, which fact was at all times well known to the said county clerk and *ex officio* comptroller of said county, the president of said board of county commissioners and said county treasurer.

The prayer of the relator's petition is that this court award a writ of *mandamus,* directed to the county clerk

of Cook county, of the board of county commissioners and *ex officio* comptroller of Cook county, to the president of the board of Cook county commissioners and to the treasurer of Cook county, commanding the said county clerk and *ex officio* comptroller that he issue and sign a warrant or warrants, duly drawn upon the treasury of said Cook county, for the payment of said bills to the amount of $1115, and commanding said president of said board of Cook county commissioners that he countersign any and all warrants upon said treasury of Cook county which may be necessary for the payment of said bills, and commanding the said treasurer of Cook county that he pay unto petitioner, upon such warrants, the said sums so due; and in case it is found that the said county clerk of Cook county is not authorized by law to sign, and the said president of the board of Cook county commissioners is not authorized by law to countersign, a warrant upon the treasury of said Cook county for the payment of said bills out of any funds now in the treasury, then the petitioner asks the court to award a writ of *mandamus,* directed to the board of Cook county commissioners of Cook county, the county clerk and *ex officio* comptroller of Cook county, the president of the Cook county commissioners and the treasurer of Cook county, commanding said board to include in its annual appropriation bill for the fiscal year of 1900 a sum sufficient to pay the bills of petitioner already due and a sum sufficient to pay bills hereafter to accrue during the term of her appointment, and commanding the county clerk of Cook county and *ex officio* comptroller to issue and sign, and commanding the president of the board of Cook county commissioners that he countersign, a proper warrant or warrants upon the treasury of said county, and commanding the treasurer of Cook county to pay such warrants so issued, upon presentation, out of such funds so appropriated by said board of commissioners, etc. The petition was duly sworn to by the petitioner, A. L. Kelly.

To this amended petition the respondents, the county of Cook, Philip Knopf, county clerk and *ex officio* comptroller, and Samuel B. Raymond, county treasurer, by Robert S. Iles, county attorney, and Frank L. Shepard, assistant county attorney, have filed a general demurrer.

FRANK ASBURY JOHNSON, and C. W. GREENFIELD, for petitioner.

JULIUS A. JOHNSON, County Attorney, (ROBERT S. ILES, and FRANK L. SHEPARD, of counsel,) for respondents.

Mr. JUSTICE CRAIG delivered the opinion of the court:

*First*—It is contended by respondents that the following act (Laws of 1887, p. 159,) is unconstitutional, as in violation of section 29 of article 6 of the constitution of 1870, viz.:

"An act to authorize the judges of the circuit courts to appoint shorthand reporters for the taking and preservation of evidence and to provide for their compensation.

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That the several judges of the circuit courts in this State be and they are hereby authorized to appoint a shorthand reporter for their respective courts, whose duty shall be as hereinafter specified. The reporter so appointed shall hold his position during the pleasure of the judges appointing him; not, however, to extend beyond the time the judges making such appointment shall be elected for: *Provided, however,* that in case of the absence or disability of the reporter so appointed, the presiding judge may appoint any other reporter to act in his place during such absence or disability:

"Sec. 2. The said reporter shall cause full phonographic notes of the evidence in all trials in the court for which he is so appointed to be taken down, and one transcript of the same, if desired by either party to the suit or by their attorney or by the judge of the court, to

be forthwith correctly made and furnished to the party so desiring it. The compensation of the reporter for taking such phonographic notes shall be fixed by the judges appointing him at any sum not exceeding five dollars per day. The presiding judge of the court shall furnish to said reporter at the close of each term of court a certificate showing the amount per diem due him, and upon presentation to the county treasurer of such county he shall pay the same out of any funds of such county in his hands. * * *

"Sec. 3. Said reporter shall, before entering upon the duties of his office, take and subscribe the official oath to faithfully discharge the duties of his office to the best of his knowledge and ability."

Section 29 of article 6 of the constitution of 1870 is as follows: "All judicial officers shall be commissioned by the Governor. All laws relating to courts shall be general, and of uniform operation; and the organization, jurisdiction, powers, proceedings and practice of all courts, of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments and decrees of such courts, severally, shall be uniform."

The principal contention, and the only point we consider necessary to consider, is, that the act in question is in conflict with this provision of the constitution; that the power of appointing official reporters is given to circuit judges only. The legislature, in enacting this law, did not attempt to regulate "the organization, jurisdiction, powers, proceedings and practice," or to so affect the process, judgments and decrees of such courts, so as to disturb their uniformity. To be repugnant to this provision of the constitution the law must give a special judicial power to judges of the circuit court which is not given by express terms or by implication to any of the judges of the other courts of the same class or grade in the State. This it does not do. The "proceedings and practice" of the courts must be construed to mean the

form in which actions are brought and the manner of conducting and carrying on suits. Bouvier defines "Practice" as "the form, manner and order of conducting and carrying on suits or prosecutions in courts through their various stages, according to the principles of law and the rules laid down by the respective courts." The duties of shorthand reporters are entirely distinct from the proceedings and practice of the courts. They take down stenographic notes of the testimony of witnesses; the rulings of the presiding judge on the admission or exclusion of evidence; the objections and exceptions of counsel of the case on trial, thus preserving a correct official history of each suit, from which transcripts can be obtained for appeals and writs of error by the parties, when desired.

In the case of *People ex rel.* v. *Onahan,* 170 Ill. 449, which involved the act of 1897, providing for the appointment of jury commissioners, it was said (p. 457): "It has been held that power may be lawfully conferred upon judges of courts to appoint park commissioners. (*People* v. *Morgan,* 90 Ill. 558; *People* v. *Nelson,* 133 id. 565.) Notwithstanding this power in the judges to appoint, the powers, proceedings and practice of the courts remain the same as before."

It is said the power of appointing a stenographer is given by this statute only to circuit court judges. The act applies to the superior court of Cook county, as the superior court of Cook county is "of the same class or grade" as the circuit court, as was said in *People* v. *Rumsey,* 64 Ill. 44. In *Berkowitz* v. *Lester,* 121 Ill. 99, the question was whether the circuit court of Cook county had jurisdiction of a criminal or *quasi* criminal action. This court there said (p. 102): "Section 23 provides that the superior court of Chicago shall be continued, and called the superior court of Cook county. But this does not bring the superior court within the terms of the exception, as judges of the superior court and judges of the

circuit court exercise the same powers and under the constitution are placed upon the same footing. (*Jones* v. *Albee*, 70 Ill. 34; *Samuel* v. *Agnew*, 80 id. 553.) Indeed, under the constitution there is no distinction, except in name, between the superior court of Cook county and the circuit court of Cook county. Both courts have the same jurisdiction and exercise the same powers." (See, also, *People* v. *Rumsey, supra; Samuel* v. *Agnew, supra; Hercules Iron Works* v. *Elgin, Joliet and Eastern Railroad Co.* 141 Ill. 491.) The superior court of Cook being thus held a circuit court and of the same class or grade, the constitutional provision requiring uniformity is complied with in the act under consideration.

*Second*—It is also contended that the act authorizing the appointment of shorthand reporters, approved May 31, 1887, was repealed so far as it relates to the officers in the matter of incurring liabilities and the payment of claims, by the act approved June 14, 1887, and amended June 26, 1895. The act relating to shorthand reporters, under which relator was appointed, and the act approved June 14, 1887, (sometimes referred to as the "Budget law,") were both passed at the same session of the legislature, the former having been approved May 31, 1887, and the latter June 14, 1887. It is a maxim in the construction of statutes that the law does not favor a repeal by implication. The earliest statute continues in force unless the two are clearly inconsistent with and repugnant to each other, or unless in the later statute some express notice is taken of the former plainly indicating an intention to repeal it; and where two acts are seemingly repugnant, they should, if possible, be so construed that the latter may not operate as a repeal of the former by implication. (*Town of Ottawa* v. *County of LaSalle*, 12 Ill. 339; *Bruce* v. *Schuyler*, 4 Gilm. 221; Dwarris on Stat. 674; *Bowen* v. *Lease*, 5 Hill, 221; *Kinney* v. *Mallory*, 3 Ala. 626.) There is nothing in the last act in this case to show that the legislature intended to abrogate or repeal the former.

The act relating to the appointment of shorthand reporters defines their duties, and then follows this provision as to their compensation: "The compensation of the reporter for taking such phonographic notes shall be fixed by the judges appointing him at any sum not exceeding five dollars per day. The presiding judge of the court shall furnish to said reporter at the close of each term of court a certificate showing the amount per diem due him, and upon presentation to the county treasurer of such county he shall pay the same out of any funds of such county in his hands."

It is alleged in the petition that on the 21st day of March,—the first day succeeding the close of the February term of court in which the duties of shorthand reporter were discharged by relator,—an itemized bill for the services rendered during the February term, amounting to $100, was prepared by relator, and the same was duly certified by the minute clerk in the circuit court of Cook county, presided over by Judge Tuley, "that A. L. Kelly has been in attendance upon said court as official reporter on each of the days noted in the above bill;" that the certificate of M. F. Tuley, the presiding judge of the circuit court of Cook county, was also attached to said itemized bill, certifying that A. L. Kelly, who is duly appointed shorthand reporter of that court, had been employed as such reporter during the said term of court, and had been employed for twenty days, commencing on February 23, 1898, and ending on March 19, 1898, and was entitled to compensation for such services at five dollars per day, amounting to $100; that thereupon said bill was presented to the county treasurer of Cook county for payment, but payment was refused, and the bill was thereupon referred by the county treasurer to the board of county commissioners, who also refused to recognize the bill or to permit the same to be paid; that at the close of each term thereafter, throughout the entire period set forth in the petition, relator prepared a bill for services

rendered at such term, and that all of said bills, amount-
ing in the aggregate to the sum of $1115, certified by the
minute clerk and the presiding judge, as aforesaid, had
been presented to the said county treasurer; that relator
had also made demand upon the county clerk, who is
*ex officio* county comptroller of said county of Cook, that
he issue to relator a warant upon the treasurer of Cook
county for the payment of said bills, and each of them,
which application had been refused by the comptroller.

The provision of the act approved June 14, 1887, (Laws
of 1887, p. 150,) upon which the respondents rely, is the
sixth paragraph of section 61, which provides that with-
in the first quarter of each fiscal year the said board
of county commissioners shall adopt a resolution, to be
termed the "annual appropriation bill," in and by which
resolution said board shall appropriate such sums of
money as may be necessary to defray all necessary ex-
penses and liabilities of Cook county to be by said county
paid or incurred during and until the time of the adop-
tion of the next annual appropriation. Several provisos
or exceptions are made. Said board shall not expend
any money or incur any indebtedness or liability on be-
half of said county in excess of the percentage and sev-
eral amounts now limited by law, and based on the limit
prescribed in the constitution, when applied to the last
previous assessment. The appropriation bill shall spe-
cify the several objects and purposes for which such ap-
propriations are made. The board shall not make any
further appropriations prior to the adoption of the next
succeeding annual appropriation bill, and said board of
commissioners shall have no power to make any contract
or do any act which shall add to the county expenditures
or liabilities, in any year, anything or any sum over and
above the amount provided in the annual appropriation
bill, and no contract shall be made or expense or liability
incurred by the said board, or any member or committee
thereof, or by any person or persons for or in its behalf,

notwithstanding the expenditure may have been ordered by the board of commissioners, unless an appropriation therefor shall have been previously made: *"Provided, however*, that nothing herein contained shall prevent the board of commissioners, by a concurring vote of four-fifths of all the commissioners, * * * from making any expenditures or incurring any liability rendered necessary by any unforeseen casualty by fire, flood or otherwise, happening after the annual appropriation bill shall have been passed or adopted. Nor shall anything herein contained be construed to deprive the board of power to provide for and cause to be paid from the county funds, any charge upon said county imposed by law, without the action of the board of commissioners, including fixed salaries of officers required by law to be paid from the county treasury, and to pay jurors' fees and other charges fixed by law."

The evident intention of the section is to prevent the board of commissioners from making any contracts or incurring any liabilities over and above the amount provided for in the annual appropriation bill; but it was not intended by the legislature, from the reading of the last proviso of paragraph 6, that the powers of the board should be restricted or the board deprived of power to provide for and pay from the county funds any charge upon Cook county *"imposed by law, without the action of the board of commissioners, including fixed salaries of officers required by law to be paid from the county treasury, and to pay jurors' fees and other charges fixed by law."* The legislature has the power to appropriate the funds of a county, or to authorize the judges of the circuit courts to appoint shorthand reporters and make their compensation a charge upon Cook county, without the action of the board of commissioners. In *People ex rel.* v. *Power*, 25 Ill. 169, which involved an act of the legislature which apportioned certain revenues between Sangamon county and the city of Springfield, this court said (p. 174): "The

revenues of a county are not the property of the county in the sense in which the revenue of a private person or corporation is regarded. The whole State has an interest in the revenue of a county, and for the public good the legislature must have the power to direct its application. The power conferred upon a county to raise a revenue by taxation is a political power, and its application, when collected, must necessarily be within the control of the legislature for political purposes." See, also, *Marion County* v. *Lear,* 108 Ill. 343; *Logan County* v. *City of Lincoln,* 81 id. 156.

The facts set up in the petition show that the relator rendered the services as a shorthand reporter under the appointment of the circuit judge, and are properly a charge upon Cook county. The legislature enacted the law giving the power of appointment, and the services are a charge fixed by law without the action of the board of commissioners, and they must be considered as coming under the head of and are referred to in the statute as "other charges fixed by law." The power of appointment is expressly conferred upon the judges of the circuit court by the legislature, as is also the power to fix their compensation, without any action on the part of the board of commissioners of Cook county.

In the case of *Kern* v. *People,* 44 Ill. App. 181, there was a petition for a *mandamus* to compel the county treasurer to pay the fees of a juror for attendance at a coroner's inquest. The act providing the manner in which the amount due to such juror should be certified was passed in 1891, and section 45 thereof was as follows: "The fee of each juror attending an inquest held over a dead body shall be one dollar per day, payable out of the county treasury, upon the certificate of the coroner or acting coroner of the county wherein the inquest was held." (Laws of 1891, p. 139.) It appeared the coroner had issued a certificate as to the amount due and demand had been made upon the county treasurer for payment, but it did

not appear either that any funds had been provided by the county board or that any warrant on the treasury had been issued by the comptroller for the payment of the bill. It was contended that the act of 1891 amendatory of section 45 was, in effect, a repeal of such portions of the "Budget law" as might be inconsistent therewith. The court said: "We do not think that it was the intention of the legislature, by the act of 1891 amendatory of section 45 of the Fees and Salaries act, to repeal any portion of the 'Budget act,' or to make the fees of jurors serving on coroners' inquests an exception to all the other expenses and disbursements of the county. * * * The juror may now apply to the county comptroller, and is, upon presentation of the certificate given him by the coroner, entitled to a warrant upon the treasurer, provided an appropriation for such purpose has theretofore been made by the county board. Repeals by implication are not favored, and the repugnance between statutes must be clear and plain or such repeal will not take place. *City of East St. Louis* v. *Maxwell*, 99 Ill. 439."

In the case at bar there is no such inconsistency or repugnancy between the act approved May 31, 1887, and section 61 of the act approved June 14, 1887, as amended June 26, 1895, as that the latter must be held to have repealed the former. They can both be reconciled and allowed to stand together without impairing the provisions of either. The petition shows that the relator performed the services as shorthand reporter and has complied with the act under which she was appointed; that she presented itemized accounts, duly certified, to the county treasurer, but payment was refused; that she demanded of the county clerk and *ex officio* comptroller warrants upon the county treasurer, but the comptroller refused to issue such warrants; that she served a notice upon the county board, informing them that she had been appointed by Judge Tuley official shorthand reporter, and presented bills duly certified, and requested the board to

include in their annual appropriation for the year 1899 a sum sufficient to pay said bills, and also to make a similar appropriation each year thereafter to cover her services, but the board refused to pay said bills or to include said bills in their annual appropriation.

*Third*—Respondents claim that neither the board of Cook county commissioners, nor the president of the board, are made parties. The petition does not make them parties in their individual names. The prayer of the petition is, that the writ of *mandamus* asked for by relator issue, directed to the county clerk of Cook county and of the board of commissioners and *ex officio* comptroller of Cook county, to the president of the said Cook county commissioners and to the treasurer of said Cook county, commanding, etc., and a writ of summons is asked, directed to the sheriff of Cook county, commanding him to summons the county of Cook, Philip Knopf, as county clerk and *ex officio* county comptroller of Cook county, and Samuel B. Raymond, as county treasurer of Cook county, and the demurrer is filed by the county attorney and the assistant county attorney, on behalf of Cook county, the county clerk and county treasurer.

In the case of *Village of Glencoe* v. *People*, 78 Ill. 382, there was a petition for a *mandamus* against the village of Glencoe and the summons ran to the village of Glencoe and was served on the president of the council of the village of Glencoe by reading and delivering him a copy. There was no appearance by respondent before judgment, and it was insisted the respondent was not properly brought before the court. The second objection was that the writ should have been against the president and councilmen of the village of Glencoe, and it should have been personally served on each of them. This court said (p. 386): "The duty sought to be enforced is claimed to be imposed upon 'the council of the village of Glencoe.' No other branch of the municipality has anything to do with it. The writ was therefore properly directed.

(*People ex rel.* v. *Mayor, etc. of Bloomington,* 63 Ill. 207.)
The object of the writ is to coerce the performance of a
duty which is claimed to be obligatory on the council as
a body, without regard to the individuals who compose
that body.    There might, therefore, be an entire change
in the members composing the council without in anywise
affecting the proceeding.    The duty sought to be enforced,
although to be discharged by one branch of the corpo-
rate body, is.nevertheless a corporate duty, and the pro-
ceeding might with equal propriety have been against
the corporation, the ultimate result being precisely the
same.    (See Dillon on Mun. Corp. sec. 701.)    We are of
opinion, therefore, that service upon the president which
is authorized by section 7 of the Revised Statutes of 1874,
(p. 775,) in suits against villages, is sufficient.    The per-
emptory writ, however, is governed by different prin-
ciples, and should be served upon those composing the
council at the time of the service." See, also, *People* v.
*Getzendaner,* 137 Ill. 234; *Sheaff* v. *People,* 87 id. 189; *City of
Chicago* v. *Sansum,* id. 182.

. Cook county having appeared by the county attorney
and demurred to the petition will be bound by the pro-
ceedings herein, and under the foregoing authorities the
writ can be served upon the individuals constituting the ·
board of county commissioners, the county clerk, the
county treasurer, etc.

Regarding the petition as sufficient the demurrer will ·
be overruled, and judgment is rendered awarding a per-
emptory writ at the suit of the People, upon the relation
of A. L. Kelly, petitioner, directed to the board of Cook
county commissioners, the county clerk and *ex officio*
comptroller of Cook county, the president of the board
of Cook county commissioners and the treasurer of Cook
county, commanding the said board of commissioners to
include in its annual appropriation bill for the fiscal year
of 1900 a sum sufficient to pay the bills of the petitioner
which shall have theretofore accrued under and by vir-

tue of said appointment and which may thereafter accrue during the said fiscal year, and that they likewise include in the annual appropriation bill to be adopted each year thereafter a sufficient sum for the payment of such bills as may accrue to the petitioner under and by virtue of said appointment during the term for which said appointment was made, if she shall continue to perform during said term the duties of shorthand reporter, and commanding the said county clerk of Cook county and *ex officio* comptroller of said county to issue and sign, and commanding the said president of the said board of Cook county commissioners that he countersign, a proper warrant or warrants upon the treasury of the said Cook county for the payment thereof, and commanding said treasurer of Cook county that he pay such warrant so issued, upon presentation, out of such funds so appropriated by said board of commissioners.

*Mandamus awarded.*