## Homer K. Galpin, Complainant, v. City of Chicago et al., Defendants. Separate Appeals of State Board of Pharmacy, Illinois State Board of Dental Examiners and The Anti-Cruelty Society.

### Gen. Nos. 16,015, 16,016, 16,017.

1. STATUTORY LAW—*when repeal by implication arises.* A repeal by implication arises where the law infers a repeal because of absolute necessity, owing to such conflict between an earlier and a later statute that both cannot stand together. The repugnancy of the two statutes compels the court to infer from the enactment of the later statute a legislative intent to repeal the earlier act.

2. STATUTORY LAW—*when repeal by implication does not arise.* An implied repeal on the ground of conflict or repugnancy will not occur in any instance, unless both the object and the subject of both the earlier and the later statute are the same. If their objects are different both must stand. In such case the conflict is merely apparent, although both relate to the same subject, and when the language of each statute is restricted to its own object the two will run in parallel lines without meeting. It is necessary to the implication of a repeal that the objects of the two statutes are the same; if they are not, both will stand, though they may refer to the same subject.

3. STATUTORY LAW—*effect where conflicting statutes are passed upon the same day.* Statutes passed on the same day and to take effect at the same time will all be assumed to have been enacted at the same time and are to be construed as one act. Such construction should be given, if possible, as shall leave all to stand. If this cannot be done, only so much is to be disregarded as cannot stand.

4. MUNICIPAL COURT—*section 57 of act of 1907 construed.* Section 57 of the act of 1907 insofar as it appropriates fines, penalties and forfeitures to the city to satisfy "uncollected costs," does not affect the appropriations previously made by statute in favor of the State Board of Pharmacy, the State Board of Dental Examiners and the Anti-Cruelty Society; the appropriations in favor of these several organizations out of fines, penalties and forfeitures remain intact and wholly unaffected by said section 57 of the act of 1907.

Bill in equity. Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed and remanded. Opinion filed December 2, 1910.

E. J. FRANKHAUSER, for Illinois State Board of Pharmacy, appellant.

V. A. WRIGHT, for The Illinois State Board of Dental Examiners, appellant.

JOHNS & WOOD (BOWEN W. SCHUMACHER, of counsel), for The Anti-Cruelty Society, appellant.

TOLMAN, REDFIELD and SEXTON, for South Park Commissioners, appellant.

EDWARD J. BRUNDAGE, for appellee, City of Chicago; EDWIN H. CASSELS, of counsel.

MR. JUSTICE CHYTRAUS delivered the opinion of the court.

These appeals are prosecuted from the same decree and upon the same record as was the appeal of John J. Healy in the above entitled cause, which appeal has already been disposed of at this term of court. It is unnecessary now to make any statement of the facts and the controversy involved, because the statement, which precedes the opinion in the appeal of Healy, covers the facts sufficiently for a full understanding of the questions in these appeals. Reference is therefore made to that statement. *Ante* p. 135.

At the time of the passage of the Municipal Court Act in 1905 and of the Act amendatory thereof in 1907, the State Board of Pharmacy existed as a state governmental agency under an enactment by the legislature upon a special subject, entitled "An Act to regulate the practice of pharmacy in the State of Illinois, to make an appropriation therefor, and to repeal certain acts therein named," approved May 11, 1901, and in force July 1, 1901. This act is part of chapter 91 of the revised statutes, entitled Medicine and Surgery. Among other things the act provides for the registration of pharmacists and assistant pharmacists and prohibits any person not registered from

conducting a pharmacy or drug store and from serving as clerk or salesman in the sale of drugs or medicines. It forbids, also, the adulteration or alteration of drugs, chemicals, medicines or pharmaceutical preparations. The act provides for the prosecution and punishment of offenders against the various provisions thereof by the imposition of fines and makes it the duty of the state's attorney of the county, wherein offenses are committed, to prosecute upon proper complaints being made. Section 15 thereof provides that "All penalties collected under the provisions of this act shall inure to the Board of Pharmacy." The existence of the board and the enforcement of the provisions of the act involve sundry expenses. Section 11 provides that the secretary of the board shall receive his expenses and a salary, not exceeding $2,500 per year, to be fixed by the board; that the members shall receive their necessary expenses and five dollars per day for actual service; and that these "expenses shall be paid from the fees, penalties and appropriations received by the board under the provisions of this act." No appropriation except the fees for examinations and registrations and the penalties for offenses against its provisions is provided for by the act. The amount of the fines for prosecutions under the Pharmacy Act found by the decree to have been collected and to be held by complainant is $1,431.50.

The Illinois Board of Dental Examiners exists as a state governmental agency under an act entitled "An Act to regulate the practice of Dental Surgery and Dentistry in the State of Illinois, and to repeal an act therein named," found in chapter 91 of the Revised Statutes. It was approved on the same day, namely, May 18, 1905, and went into effect on the same day, namely, July 1, 1905, as the Municipal Court Act of 1905. In a general way it may be said the act regulates the practice of dentistry in the State of Illinois, as the pharmacy act regulates the

practice of pharmacy. Section 9 of this act provides that all expenses for carrying out and enforcing the provisions of the act "shall be paid from the fees, fines and penalties received and recovered by the board under the provisions of this act, provided, that no part of said expense shall be paid out of the state treasury." In section 11 it is provided that: "All fines imposed and collected under this act shall be paid to the Illinois Board of Dental Examiners for its use." The amount of fines in prosecutions under the Dental Surgery act, found by the decree to have been collected and to be held by complainant, is $880.

The defendant Anti-Cruelty Society, incorporated and existing under and by virtue of the laws of the State of Illinois, is a society for the prevention of cruelty to animals and to children. In chapter 38, being the Criminal Code, of the Revised Statutes of this state is to be found an act entitled "An Act to provide for the payment of fines paid in money upon all prosecutions for cruelty to animals and children, to the support of societies for prevention of cruelty to animals and children or humane societies," approved June 23, 1885, and in force July 1, 1885. This act is as follows:

"Section 1. That all fines, paid in money, imposed through the agency of any humane society or society for the prevention of cruelty to animals and children under the laws of the State of Illinois, shall when collected, be paid into the treasury of such society, to be applied towards its support.

"Section 2. That all the fines paid in money imposed through the agency of any humane society (or society for the prevention of cruelty to animals and children) under the laws or ordinances of any city, town or village, within the State of Illinois, may, when collected, be paid into the treasury of such society: Provided, such society named in this act shall be incorporated under and by virtue of the laws of the State of Illinois."

By the decree it appears that the complainant, as part of the fund in question, has in his hands $678,

collected by him for fines imposed through the agency of the Anti-Cruelty Society.

As shown in the case of Healy's appeal aforesaid, the amount of the fund arising from fines collected, in criminal and quasi-criminal cases prosecuted in the name of the people, in the hands of complainant was $102,285.25 and was insufficient to pay the total of the claims made by the several defendants, including the state's attorney and the city.

The decree directs, in effect, that $2,374 be first taken out of the fund arising from the collection of fines and in the complainant's hands and paid to the three boards of park commissioners. This amount is in total of the one-half of the fines imposed and collected for violations of park ordinances and of the whole of all the fines imposed and collected for violations, within park territorial jurisdictions, of the Motor Vehicle Law of the State. The one-half of the fines for violations of park ordinances was evidently decreed to be paid to the park commissioners in accordance with the provisions of section 58 of the Municipal Court Act. The fines for violations of the Motor Vehicle Law were decreed to be paid to the park commissioners in accordance with the provisions of section 19 of the Motor Vehicle Law, part of chapter 121 of the Revised Statutes, in force July 1, 1907, and evidently upon the theory that the Motor Vehicle Law was passed later than or simultaneously with the passage of the Municipal Court Act. Allowing a priority in right to the park commissioners and taking this amount of $2,374 out of the fund, leaves a remainder of principal of $99,911.25. As to these priorities no dispute is made.

The city's claim is made under section 57 of the Municipal Court act and is for $38,185.20 for unpaid costs in criminal and quasi-criminal cases, wherein convictions were had, prosecuted in the name of the people or some state or county officer in his official capacity, and for $64,088 for unpaid costs certified to the criminal court in preliminary examinations where

the defendants were held to the criminal court. While the record, as held in the Healy appeal, justifies a decree that the city is entitled to be paid the $38,185.20, it does not justify a decree that the city had a right to be paid the $64,088. Whether the city is entitled to be paid the whole or any part of the latter amount and, if it be entitled to be paid a part thereof, then how much, remains open to question, so far as this case is concerned.

Healy's claim for services as state's attorney for Cook county is $51,103.79. This amount he is entitled to be paid and, as held in the Healy appeal, prior to the payment to the city of Chicago of any money out of such fines and forfeitures collected. According to the pleadings and the decree, sufficient money remains in the hands of complainant to pay the three appellants herein all that they claim, after the payment to the park commissioners and to Healy of all they are entitled to. It is therefore unnecessary now to inquire whether money collected for fines in prosecutions under the pharmacy law, the dental law or the anti-cruelty law may be used toward paying the Healy claim. Furthermore, in People v. Nedrow, 122 Ill. 363, it was held that the state's attorney's lien extended to fines imposed under the pharmacy law and gave him an interest in those fines which, at least to the extent of his fee in each particular case, was superior to the right of the State Board of Pharmacy.

The remainder of the fund in complainant's hands, after the payments to the park commissioners and Healy, may or may not be sufficient to pay in full these three appellants and the city. The possibility of the remainder being insufficient requires a determination as to the relative rights of these latter parties.

Regarding the claims of these appellants the decree finds and decrees "that the defendant herein would be entitled to receive from complainant, in case the funds in his hands were sufficient, the sums which they and each of them respectively claim" if there

were any remainder, after the payment of the claims of the city, the park commissioners and Healy, but that, as the money in the hands of complainant is insufficient to pay the claims of the city and the park commissioners, therefore nothing shall be paid to any of the other defendants.

It is the theory of the city, and of the decree, that as section 57 makes no distinction between fines imposed in the ordinary criminal or quasi-criminal cases and those imposed under the enactments whereunder appellants claim, therefore no distinction is to be observed but all fines are to be regarded as equally subject to be used to satisfy the claim of the city, and, further, that because section 57 was enacted later than the enactments upon which the appellants respectively predicate their claims, therefore a legislative intent to give priority is to be inferred in favor of the purposes provided for by said section 57.

As stated in the opinion in the appeal of Healy, fines, penalties and forfeitures collected are primarily the state's money. By various enactments, always general in their nature and of uniform operation throughout the entire state though changed in verbiage from time to time, the legislature has, since early in the history of the state, in anticipation, appropriated the receipts from fines, penalties and forfeitures to the common school funds of the various counties wherein the same have been imposed. The law in force, in this respect, at the time of the first enactment of section 57 of the Municipal Court act is to be found in section one of article XIV, chapter 122, of the Revised Statutes of 1905 and as revised in 1909 it is to be found in section 238 of the School Law in the session laws of that year.

From time to time new statutory regulations have been enacted prohibiting acts not before prohibited by statute and imposing fines and penalties for violations of these statutory prohibitions. When enacting these new laws, the legislature has seen fit sometimes specifically to appropriate, in whole or in part, the fines

and penalties which would result from infractions of these laws to be used for or toward the maintenance of a state agency created to enforce the new statutory regulation, as, for instance, in the enactment of the state board of health law, the law regulating employment offices and agencies, and the law for the protection of game, etc.  Fines and penalties have also been appropriated in anticipation to be used for the purpose of aiding in bringing about the apprehension and punishment of offenders, for instance, in the enactment of laws providing for the payment of some part of the fines to informers, as in *qui tam* actions and actions on penal statutes.  The dental act, the pharmacy act and the act to prevent cruelty to children and animals, under which appellants claim, are enactments whereby the legislature has established new statutory regulations and, at the same time, appropriated the fines imposed thereunder toward the enforcement of these enactments.  We have given this consideration to the nature of the laws under which appellants claim, because we consider their nature to be material in determining upon the city's claim of the legislative intent to give priority.

The position of the city herein is somewhat anomalous.  On its behalf, it is urged that it has the right to be paid first and it is also conceded that, whenever sufficient money is collected of fines, penalties and forfeitures to pay both the city's claim on account of uncollected costs and appellants' claims for fines imposed under the acts whereupon they predicate their claims, then appellants are entitled to be paid.  Such condition of the law cannot arise by implication from the fact of the latter passage of the act under which the city claims.  The later enactment of section 57 either repealed the earlier acts, or it did not affect them at all.

A repeal sometimes occurs by implication, where there is no express repeal.  A repeal by implication arises where the law infers a repeal because of absolute necessity, owing to such conflict between an earlier

and a later statute that both cannot stand together. The repugnancy of the two statutes compels the court to infer from the enactment of the later statute a legislative intent to repeal the earlier act. Where it is possible to reconcile the two acts, courts cannot infer an intent to repeal the former.

"It is a maxim in the construction of statutes that the law does not favor a repeal by implication. The earliest statute continues in force unless the two are clearly inconsistent with and repugnant to each other, or unless in the later statute some express notice is taken of the former, plainly indicating an intention to repeal it; and where two acts are seemingly repugnant, they should, if possible, be so construed that the latter may not operate as a repeal of the former by implication." People v. Raymond, 186 Ill. 407, 416.

An implied repeal on the ground of conflict or repugnancy will not occur in any instance, unless both the object and the subject of both the earlier and the later statute are the same. If their objects are different, both must stand. In such case the conflict is merely apparent, although both relate to the same subject, and when the language of each statute is restricted to its own object the two will run in parallel lines without meeting. It is necessary to the implication of a repeal that the objects of the two statutes are the same; if they are not, both will stand, though they may refer to the same subject. United States v. Claflin, 97 U. S. (7 Otto) 546. The object of section 57, under which the city claims, is entirely different from the object of either of the statutes under which the appellants severally claim. We cannot apply here the doctrine of repeal by implication. We are unable to deduce from the language of section 57 any such radical legislative purpose as would be an intention to hamper or destroy several of the state's governmental agencies in Chicago, which agencies have been and are exercising the police power of the state for certain purposes in a portion of the state where the necessity is greatest for the exercise of the power

for those purposes. The state has made no appropriation for the maintenance of these agencies other than the fines and penalties which are collected for violations of the laws which these agencies exist to enforce. We cannot assume a legislative intent to cripple these agencies. The seeming inconsistency between section 57 and the acts under which appellants claim is obviated by applying section 57 to that part only of the state's fines, penalties and forfeitures which were not already specifically appropriated at the time of the enactment of section 57, that is, by applying the later enactment to the residuum not previously disposed of.

Furthermore, the dental act was not passed before the Municipal Court act. The dental act was approved on the same day, and went into effect on the same day, as the first enactment of section 57 in 1905. So far as the questions now before us are concerned, the section was not changed by the new enactment of that section in 1907. "Statutes passed on the same day, and to take effect at the same time, will all be assumed to have been enacted at the same time and are to be construed as one act. Such construction should be given, if possible, as shall leave all to stand. If this cannot be done, only so much is to be disregarded as cannot stand. * * * The courts are continually called upon to revise the results of careless and sometimes reckless legislation; to try to make consistent that which is inconsistent; to harmonize that which is full of discord. This they must do the best they can by known rules of construction." Territory v. Wingfield, 15 Pac. Rep. 139. When statutes are passed at the same session to take effect the same day, that is strong evidence that they were intended to stand together. Commonwealth v. Huntley, 156 Mass. 236.

For the reasons herein set forth, the decree of the Circuit Court is reversed and the cause is remanded for further proceedings not inconsistent herewith.

*Reversed and remanded.*